VIVIAN MORALES PÉREZ y OTROS, demandantes y recurrentes, *v.* CLÍNICA FEMENINA DE PUERTO RICO y DR. ALFREDO COLÓN MARTÍNEZ, demandados y recurridos.

*Número:* RE-88-164          *Resuelto:* 29 de abril de 1994

*Raúl Barrera Morales*, abogado de la recurrente; *Gonzalo J. Barreras Varona*, abogado del recurrido.

## SENTENCIA

## I

La recurrente Vivian Morales Pérez, luego de tener su segundo hijo, decidió esterilizarse. Para ello acudió a la Clínica Femenina de Puerto Rico luego de haber visto en el periódico un anuncio que ofrecía un método eficaz y seguro de esterilización.

La señora Morales acudió a esta clínica el 20 de julio de 1983 y se sometió al método de esterilización conocido como laparoscopia.[1] La recurrente alega que el médico, quien le explicó este procedimiento quirúrgico y la esterilizó, fue el recurrido Dr. Alfredo Colón Martínez. A pesar del procedimiento al que fue sometida la recurrente, posteriormente su médico privado encontró que estaba embarazada, y el 18 de octubre de 1984 tuvo un tercer hijo sin mayores complicaciones para la madre o el bebé.

Como consecuencia de su esterilización frustrada, la señora Morales presentó una demanda por daños y perjuicios por alegada mala práctica de la medicina contra la Clínica Femenina de Puerto Rico y el doctor Colón Martínez. La reclamación estaba predicada en los sufrimientos físicos y angustias mentales de la señora Morales como consecuencia de su embarazo y en su temor por sufrir complicaciones con el tercer parto por tener un tipo de sangre RH negativo

---

[1] La esterilización por laparoscopia consiste en la introducción de un instrumento conocido como laparoscopio en la cavidad abdominal. Se ilumina el interior del abdomen y se colocan unos anillos que comprimen los tubos de falopio para obstruir el paso de los óvulos.

y porque su segundo parto había sido difícil. Para la fecha de la demanda, el tercer hijo aún no había nacido.[2]

La Clínica Femenina de Puerto Rico contestó la demanda, negando su responsabilidad y alegando que no debía responder por los actos imputados contra el médico demandado.

Por su parte, el doctor Colón Martínez negó toda responsabilidad por la mala práctica alegada y alegó no haber sido el médico que intervino con la recurrente en la operación a que ésta fue sometida en la Clínica Femenina de Puerto Rico.

Mediante una moción presentada antes del juicio, la parte demandante varió su teoría en cuanto a que su causa de acción se fundamentaba en mala práctica de la medicina y la sustituyó por una de incumplimiento de contrato. Alegó que los codemandados le habían garantizado a la señora Morales la eficacia de la esterilización y que deben responder por los daños causados.

Según consta en la sentencia del tribunal a quo, los abogados de la clínica codemandada renunciaron y nadie más compareció por dicha parte ante el tribunal de instancia.

La señora Morales presentó el testimonio de los Dres. Ramón L. Ramos y Carlos F. Ortiz, ambos en su calidad de testigos de ocurrencia debido a que atendieron a la señora Morales en su parto antes y en su parto después de la laparoscopia a la cual fue sometida.

En lo pertinente al recurso ante nos, el tribunal de instancia hizo las determinaciones de hecho siguientes: (1) La señora Morales reconoce que no firmó ningún contrato con otra parte que no fuera la Clínica Femenina de Puerto Rico. (2) A las preguntas directas que fue sometida en el contrainterrogatorio —durante el juicio— acerca de si re-

---

[2] La demanda fue enmendada posteriormente para añadir como demandada a la Administración del Fondo de Compensación al Paciente. Esta acción fue desestimada mediante sentencia parcial debido a que no existía una cubierta ni una póliza a favor de los demandados por éstos no haber hecho aportación alguna a la Administración.

conocía al doctor Colón Martínez, quien estaba en Sala, la señora Morales admitió que no podía decir que ese fuera el médico que le realizó la laparoscopia. (3) Ni el doctor Ramos ni el doctor Ortiz testificaron sobre si la laparoscopia —a la cual fue sometida la recurrente— había sido realizada correctamente o no. (4) La señora Morales no contrató al doctor Colón Martínez para ser sometida a una laparoscopia y tampoco fue sometida a tal procedimiento por dicho demandado. (5) El contrato se otorgó con la Clínica Femenina de Puerto Rico a quien se le hizo el pago y quien, a su vez, contrató a un médico para que realizara la laparoscopia de la señora Morales.

El tribunal a quo desestimó la demanda al concluir que el Dr. Alfredo Colón Martínez no podía serle responsable a la señora Morales debido a que no se estableció la comisión de mala práctica de la medicina; no se probó que el doctor Colón Martínez o el médico que en realidad hubiera realizado la laparoscopia de la señora Morales hubiera contratado con ella, y no se probó que el doctor Colón Martínez le practicó la laparoscopia a la señora Morales.[3] Inconforme con la determinación anterior, la señora Morales recurre ante nos para plantear, en síntesis, que el tribunal de instancia incidió al declarar sin lugar la demanda y concluir que el doctor Colón Martínez no fue quien contrató con ella para ser sometida a la laparoscopia ni que fue el doctor que le practicó dicha operación.

Luego de un análisis de la transcripción de evidencia, de la prueba documental y de los autos, concluimos que el

___

[3] En el caso de autos, la parte demandada no presentó una moción de desestimación contra la prueba (moción de *non suit*) luego de que la parte demandante terminara de desfilar su prueba en el juicio. Simplemente sometió el caso al terminar con su interrogatorio a la señora Morales y lo mismo hizo la parte demandante. Bajo estas circunstancias, al igual que bajo una moción de desestimación contra la prueba de acuerdo con la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, el juez de instancia pudo aquilatar la prueba que tuvo ante sí; formular su apreciación de los hechos según la credibilidad que le haya merecido la prueba presentada, y dictar sentencia. *Irizarry v. A.F.F.*, 93 D.P.R. 416, 420–421 (1966). Véanse, además: *Roselló Cruz v. García*, 116 D.P.R. 511, 520 (1985); *Vda. de Zayas v. Pepsi Cola*, 114 D.P.R. 772 (1983); *Colombani v. Gob. Municipal de Bayamón*, 100 D.P.R. 120 (1971).

tribunal de instancia no erró al aquilatar la prueba y desestimar la demanda. Veamos.

## II

Este Tribunal ha establecido reiteradamente que las acciones por impericia profesional se rigen por el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141, independientemente de que esté involucrado un contrato. Véanse: *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 D.P.R. 712 (1992); *Chévere v. Cátala*, 115 D.P.R. 432, 445 (1984); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984); *Sáez v. Municipio de Ponce*, 84 D.P.R. 535, 543 (1962); *Rivera v. Dunscombe*, 73 D.P.R. 819, 839 (1952). El promovente de una acción en daños y perjuicios, bajo dicho artículo, tiene que establecer la existencia de un daño real y positivo causado mediante culpa o negligencia y probar que hubo una relación o nexo causal entre la acción u omisión culposa o negligente y el daño. H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1989, Vol. I, Cap. II, págs. 55–62.

Hemos sostenido además que, bajo nuestro derecho probatorio, la obligación de presentar evidencia recae principalmente sobre la parte que sostiene la afirmativa en la cuestión en controversia. Regla 10(B) de Evidencia, 32 L.P.R.A. Ap. IV. "Meras alegaciones o teorías no constituyen prueba." *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 D.P.R. 527, 531 (1981). *Reece Corp. v. Ariela, Inc.*, 122 D.P.R. 270 (1988).

En cuanto a las reclamaciones de responsabilidad civil hacia hospitales y clínicas, hemos establecido que "[n]o deberá exigirse en estos casos más calidad o *quantum* de prueba que el requerido en cualquier caso ordinario en que se reclame por daños y perjuicios causados por culpa o negligencia". *Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517, 521–522 (1980).

En *Torres Ortiz v. Plá*, 123 D.P.R. 637 (1989), resolvimos que procede una acción de daños por mala práctica de la medicina por la intervención quirúrgica infructuosa de esterilización *bajo determinadas circunstancias y de probarse la negligencia del demandado y la relación causal entre el daño causado y la negligencia.* En el caso citado, que también giraba en torno a una laparoscopia, se demostró por medio de prueba pericial y documental que "el anillo de falopio izquierdo no estaba comprimiendo el tubo, *sino debajo de éste —en los vasos meso-ováricos—* por lo que no se impidió que pudiera ocurrir la fertilización. Del dibujo que hizo el ... [doctor perito], también admitido en evidencia, se puede ver claramente dónde fue que el doctor Plá *colocó incorrectamente el anillo.* Esta prueba demuestra que el recurrente fue negligente al realizar la esterilización por 'laparoscop[i]a' ". (Énfasis suplido.) Íd., págs. 648–649.

A diferencia de la situación en el caso citado, un análisis cuidadoso de los autos nos convence de que no se probó la negligencia del demandado en el caso de marras.

En la vista en su fondo, el doctor Ortiz, quien atendió a la señora Morales en su tercer parto, testificó como testigo de ocurrencia y no como perito. Citamos *ad verbatim* del interrogatorio directo que le hizo al doctor Ortiz el licenciado Barrera Morales, abogado de la demandante recurrente.

LCDO. BARRERA MORALES:
P Doctor, le pregunto yo qué esterilización, si alguna, le practicó usted a la parte demandante.
[DOCTOR ORTIZ: ]
R   Perdón. No oí bien la pregunta.
P   ¿Qué esterilización, si alguna, le practicó usted a doña Vivian Morales en ese parto?
R   Bueno. En esa ..., se le hizo la ces[á]rea y se le practicó una salpingectomía bilateral, o sea, total bilateral. Qu[é] le quiero decir con eso, le removí los tubos a cada lado totalmente, las trompas de falopio, ¿verdad?, que es la palabra correcta.

P   ¿Qué hallazgo usted, si alguno, encontró en dichas trompas?

R   Bueno, en ese momento, ¿verdad?, se pudo observar como bien la paciente me había indicado, que ella había sido sometida a una esterilización por unos anillitos que se llaman "anillos de falop" y la verdad es que no recuerdo ahora mismo, si en el derecho o en el izquierdo, que no lo recuerdo, *estaban puestos los dos en los tubos, los dos anillitos.* Lo único que en uno de los tubos estaba desplazado del conducto de la trompa. O sea, que uno estaba pinchando la trompa, haciendo su propósito y el otro estaba un poquito debajo del lúmino, de la luz del tubo.

P   O sea, que uno de los anillos no estaba haciendo su propósito.

R   *En ese momento, no. En ese momento, no*, porque así se lo mostré yo al esposo de ella. O sea, yo saqué los tubos y se los mostré al esposo de ella y en el reporte patológico eso también ...

P   Si usted es tan amable, en el récord médico del hospital, mire a ver si encuentra ...

R   En qué tubo, para yo especificarle. Sí, porque me ...

P   Sí, por favor, para que esté eso claro, por favor.

R   Sí, yo pongo en el reporte operatorio que en el tubo derecho, en la trompa de falopio derecha el anillo estaba en su sitio, en el tubo en sí. *Y en el izquierdo, pues, estaba desplazado inferior al tubo donde había sido colocado, en el izquierdo.*

P   Y el hecho *que estuviera desplazado*, qué resultado tendría.

R   El hecho de que estuviera desplazado, o sea, que no estaba haciendo su propósito, pues, lo que ella tuvo, un embarazo, un embarazo. O sea, eso explica el por qué del embarazo.

P   Usted diría que esa es la reacción directa de un embarazo el hecho *de que el anillo se ha desplazado.*

R   Bueno, *no estaba en su sitio donde se supone que esté*, esa es la explicación.

P   De otra manera, si ese anillo estaba en su sitio, ¿qué embarazo, si alguno, podría tener la parte demanandante?

R   Bueno, ¿qué embarazo, si alguno? Lo que pasa es que todas estas operaciones tienen su por ciento de error, ¿verdad?, y ella pudo no haber tenido un embarazo como el que tuvo, a término, pero pudo haber tenido un embarazo e[c]tópico, un embarazo en el tubo que no corriera todo el tubo y se implantara en el interior de la matriz y llegara a su término como ese llegó y esa es una de las fallas de esas operaciones. Pudo haber tenido un embarazo e[c]tópico. Un embarazo e[c]tópico es un embarazo fuera del interior de la matriz, en el tubo, por ejemplo.

P   En el tubo.
R   En el mismo tubo, sí. (Énfasis suplido.) T.E., págs. 31 a 33.

El tribunal de instancia determinó que ni el doctor Ortiz ni el doctor Ramos, ginecólogo y obstetra quien atendió a la señora Morales en su segundo parto, indicaron si la laparoscopia a que fue sometida la recurrente "estuvo bien o mal hecha, ni quién la hizo, ni cuándo, ni dónde, ni si su efectividad podría ser garantizada". Apéndice II, pág. 6. No erró el tribunal a quo al hacer dicha determinación. La demandante recurrente no presentó testimonio pericial, testifical o documental alguno para probar la negligencia de quien la sometió a la operación de laparoscopia. A través de la prueba testifical, sí se señaló que los anillos de falopio fueron colocados correctamente, pero que al momento de ser examinados por el doctor Ortiz el anillo que estaba en el tubo de falopio izquierdo *se había desplazado*. Dicho señalamiento, hecho por el doctor Ortiz en la vista a base de sus observaciones y de las anotaciones que hizo en el informe médico, no da base para sostener que hubo negligencia por parte del médico que operó a la señora Morales.

> Al cumplir con nuestra función revisora en casos de impericia médica, nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y la prueba documental. En ausencia de prueba no es nuestra función establecer a este nivel apelativo los elementos requeridos por el Art. 1802 del Código Civil[.] De lo contrario, cedemos a la tentación de sustituir el criterio de los peritos médicos por el nuestro, según un estudio apelativo de la literatura disponible. *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 821–822 (1987).

En casos como éste, en el cual se alega que una operación de esterilización ha fallado, igual que en los casos ordinarios de daños y perjuicios, el demandante tiene que probar por preponderancia de la evidencia que el daño ocurrido se debió —con mayores probabilidades— a la negligencia que el demandante imputa. No basta, pues, el solo hecho de que —luego de una esterilización— la mujer haya

quedado encinta para que se establezca una mala práctica de la medicina. Después de todo, "[l]a negligencia del médico, al igual que la de cualquier otra persona demandada al amparo del Art. 1802 del Código Civil[,] no se presume por el mero hecho de que el paciente haya sufrido un daño o que el tratamiento no haya tenido éxito". *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 650 (1988). Véase Brau del Toro, *op. cit.*, pág. 394.

En ocasiones repetidas hemos sostenido que en ausencia de pasión, prejuicio, parcialidad o error manifiesto nos abstendremos de intervenir con la apreciación que de la evidencia sometida hace el juzgador de hechos en el tribunal de instancia. *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49 (1991); *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989), *Pueblo v. Acabá Raíces*, 118 D.P.R. 369, 375-376 (1987); *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983); *Pueblo v. Turner Goodman*, 110 D.P.R. 734 (1980); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 654 (1986). La apreciación de los hechos que se hace en el foro de origen merece gran respeto y deferencia, pues se tuvo allí la oportunidad de ver y oír a los testigos declarar y observar su comportamiento. *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470 (1992); *Pueblo v. Cabán Torres*, supra; *Pueblo v. Ríos Alvarez*, 112 D.P.R. 92 (1982). Sus determinaciones de hecho no deben ser descartadas arbitrariamente ni ser sustituidas por el criterio del tribunal apelativo a menos que éstas carezcan de base suficiente en la prueba presentada o resulten increíbles o imposibles. *Pueblo v. Maisonave Rodríguez*, supra.

Debido al resultado al cual llegamos, en cuanto a que no se probó la negligencia de quien le practicase la laparoscopia a la señora Morales, no es necesario que nos adentremos en la controversia en torno a la identificación del demandado Colón Martínez como el doctor que le practicó la operación a la recurrente. Valga señalar aquí que el doctor

Colón Martínez ha negado, desde su contestación a la demanda, haber sido quien intervino con la señora Morales y que la evidencia de la recurrente en cuanto a este aspecto resulta ser sumamente débil.(⁴)

Por los fundamentos que anteceden, *se confirma la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan, el 29 de marzo de 1988.*(⁵)

---

(⁴) La demandante recurrente no estaba imposibilitada de obtener una prueba directa o circunstancial para cumplir con su *onus probandi.* Del propio testimonio de la señora Morales surge que ella habló por teléfono con *la recepcionista* de la Clínica Femenina de Puerto Rico (T.E., pág. 43); vio y habló con *la secretaria* de la Clínica cuando acudió allí para la operación (íd., pág. 46); acudió a la Clínica con *su esposo* (íd.); *empleados de la Clínica* le hicieron pruebas de laboratorio en la propia Clínica (íd., pág. 48); pasó a un salón de conferencias en la Clínica donde "había un grupo de por lo menos *siete a diez señoras* que iban a la misma operación" (énfasis suplido) íd.; luego entró un doctor que, según la señora Morales, se identificó como "el doctor Alfredo Colón" y que les dio una charla sobre la operación a ella *y a las señoras allí presentes* (íd., pág. 49); posteriormente, cuando *una enfermera* la despertó luego de la operación, la señora Morales notó que en el cuarto de operación "habían *las otras pacientes* esperando por pasar a operarse" (énfasis suplido) íd., pág. 50.

A pesar de que desde su contestación a la demanda el Dr. Alfredo Colón Martínez negó haber intervenido o participado en los procedimientos alegados en la demanda, y aun cuando la señora Morales pudo haber utilizado a las personas arriba mencionadas como testigos de identificación o como fuentes de información, la demandante recurrente no presentó prueba testifical alguna para identificar al demandado recurrido. Más aún, a pesar de que transcurrieron más de tres (3) años desde que se presentó la demanda hasta que se celebró el juicio, y aun cuando la identificación correcta del demandado era un punto neurálgico en este caso, la demandante recurrente nunca utilizó los métodos de descubrimiento de prueba que tuvo a su disposición para investigar e identificar quién en realidad le realizó la operación.

La señora Morales presentó una fotocopia de un documento titulado "Exposición de la Reclamación Grupal de Salud" de 20 de julio de 1983. En dicho documento de facturación, Miguel Mojica Rodríguez, entonces esposo de la recurrente, reclama, a nombre de ella, a la compañía de seguros John Hancock por los servicios prestados en la Clínica Femenina de Puerto Rico el 20 de julio de 1983. Aun cuando aparece en el documento referido en letra de molde el nombre de "Alfredo Colón Martínez", en el apartado titulado "firma del médico" aparece una firma casi ilegible que no parece ser la del doctor Colón Martínez. Por haber sido este aspecto controvertido desde el inicio del caso, la demandante pudo haber probado que la firma del documento en efecto es la firma del demandado o que el número de licencia que aparece escrito correspondía al demandado. No lo hizo. La función de identificar correctamente al demandado como el causante del daño recaía en la demandante. Después de todo, no le correspondía al doctor Colón Martínez probar que él no había sido el médico que realizó la operación. "Es necesario que del hecho culposo o negligente sea responsable, por actos directos o mediatos, el actor a quien se imputa." *Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700, 705 (1982). Véase *Estremera v. Inmobiliaria Rac, Inc.,* 109 D.P.R. 852 (1980).

(⁵) En cuanto a la Clínica Femenina de Puerto Rico, surge de la sentencia del tribunal de instancia que éste fue informado de que la Clínica "se había sometido a la protección de la Corte de Quiebras y había cesado operaciones sin que se supiera

Lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García disintió con una opinión escrita. El Juez Asociado Señor Alonso Alonso concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

Mediante preponderancia de la prueba, Vivian Morales Pérez demostró cabalmente negligencia en la esterilización fallida a la cual fue sometida en la Clínica Femenina de Puerto Rico.

---

nada más de dicha institución, sus dueños o sus oficiales". En vista de ello no dispuso de la reclamación en contra de dicha institución. En su solicitud de revisión la demandante recurrente no cuestiona dicha determinación. No podía actuar de otra forma el foro de instancia. La Sec. 362(a) de la Ley de Quiebras, 11 U.S.C. sec. 362(a), establece la paralización automática (*automatic stay*) de todo procedimiento o actuación contra una persona o entidad que presenta una solicitud de quiebra ante el Tribunal de Quiebras. La paralización automática bajo la Ley de Quiebras tiene un efecto inmediato y amplio, y es aplicable, *inter alia*, a cualquier entidad contra el comienzo o la continuación de una acción civil contra el deudor y contra la ejecución de una sentencia en su contra que haya sido obtenida antes del comienzo del caso. Aunque la Sec. 362(b) de la Ley de Quiebras, 11 U.S.C. sec. 362(b), establece ciertas excepciones a la paralización automática, la presente reclamación no está comprendida entre ellas. "Debe destacarse que no se trata de una orden de paralización emitida por el Tribunal de Quiebras y que no se requiere notificación alguna al respecto para que la paralización surta efecto. *Basta con la mera presentación de la solicitud de quiebra ante el Tribunal de Quiebras.* Tan pronto esto ocurre, en lo que atañe a nuestros tribunales, éstos *pierden toda jurisdicción.* Ese es precisamente el sentido de la calidad de automática que caracteriza a esta paralización." (Énfasis en el original.) *La paralización automática de la Ley de Quiebras,* Instituto de Estudios Judiciales, 1993, pág. 11. Véanse, además: *Highland Realty, Inc. v. Tribunal Superior,* 103 D.P.R. 306 (1975); 3 *Collier on Bankruptcy* Secs. 362–362.13 (1993); R.I. Aaron, *Bankruptcy Law Fundamentals* Sec. 5.01 (1991); E. Warren y J. Westbrook, *The Law of Debtors and Creditors,* Boston, Ed. Little, Brown and Co., 1986, págs. 403–429.

I

En *Torres Ortiz v. Plá*, 123 D.P.R. 637 (1989), la negligencia del médico quedó *claramente establecida* a través de la prueba sólida del testimonio del médico sobre el informe de la segunda esterilización, expositivo de que el anillo de falopio izquierdo no comprimía el tubo ni impidió la fertilización. El anillo se colocó incorrectamente.

En el caso de autos la prueba fue de esa misma calidad y valor. El Dr. Carlos F. Ortiz, galeno que realizó la esterilización de Vivian, luego de su tercer alumbramiento, declaró acerca de sus hallazgos durante dicho procedimiento. De manera no contradicha atestó que el anillo colocado en la trompa de falopio izquierda "estaba desplazado del conducto de la trompa" (T.E., pág. 32) y su efecto era "que no estaba haciendo su propósito ... *eso explica el por qué del embarazo*". (Énfasis suplido.) Íd., pág. 33.

En ambos casos la conclusión es la misma: *los embarazos se debieron a que los anillos no cumplieron su función al no estar correctamente colocados.*

*Torres Ortiz v. Plá*, supra, no es distinguible de este caso. El que en *Torres Ortiz v. Plá*, supra, se colocara el anillo en los vasos meso-ováricos, mientras que en éste se hubiera "desplazado" de la trompa de falopio, no hace diferencia; todo lo contrario, incontrovertidamente refleja la negligencia del médico al practicar la laparoscopia. No puede atribuirse este desplazamiento a las actuaciones de Vivian; sería absurdo, pues la colocación del anillo no estuvo bajo su control.

Demostrado que el embarazo se debió a que el anillo no cumplió su función *al no estar colocado donde correspondía*, es evidente la negligencia médica.

## II

Aun así, el Tribunal Superior, Sala de San Juan (Hon. Amneris Martínez de Cuevas, Juez), desestimó la demanda contra el Dr. Alfredo Colón Martínez bajo el fundamento de que no se demostró que realizó la esterilización frustrada.([1]) Incidió.

La prueba *no* controvertida revela que el médico que practicó esa laparoscopia se identificó ante Vivian como el Dr. Alfredo Colón Martínez; esa misma persona fue quien le explicó el procedimiento a que ella sería sometida. Además, la prueba documental estableció que el doctor Colón Martínez fue quien facturó al plan médico por dicha intervención. No albergamos dudas de que, por preponderancia de la prueba, el doctor Colón Martínez fue quien la atendió. Le aplica la presunción sobre "[i]dentidad de persona, de la identidad de nombre". Regla 16(25) de Evidencia, 32 L.P.R.A. Ap. IV. Véase *Pueblo v. Corales Irizarry*, 107 D.P.R. 481, 487 (1978).

Finalmente, advertimos que ante esta reclamación, su naturaleza y trasfondo situacional, el doctor Colón Martínez optó por no hacer uso del trámite de una demanda contra tercero —Regla 12.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III— para traer al pleito como responsable a aquel que según él efectivamente hizo la laparoscopia; tampoco presentó prueba directa, en su turno, para rebatir la que le vinculaba. Simplemente sometió el caso con la prueba de Vivian; de nada puede ahora quejarse.

Revocaríamos la sentencia de la ilustrada sala de instancia y devolveríamos el caso para la valoración de daños. Sólo así hacemos cumplida justicia.

---

([1]) La mayoría del Tribunal no ha examinado este aspecto, bajo el predicado de que no se probó la negligencia de quien practicó la esterilización.