Arbona Lago, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Antecedentes
A
Ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI) y en la causa DAC1999-1252, se tramitó en conjunto la división de herencia de los hermanos María Josefa, María de las Mercedes y José Antonio González Rodríguez, a las que concurren 42 coherederos.
El pleito terminó mediante sentencia (Hon. Olivette Sagebien Raffo) del 14 de junio de 2000. No consta en el expediente de epígrafe en qué fecha se archivó en autos copia de la notificación de dicha sentencia, pero a juzgar *1001 por los trámites posteriores, concluimos que el dictamen advino final y firme. De la corroboración hecha en el sistema TR.H3 consta que el archivo en autos de la notificación de la sentencia del 14 de junio de 2000 ocurrió el 20 de igual mes y año.
El caudal relicto a distribuirse por sentencia consistía de las siguientes tres fincas:

“Rústica: Predio de terreno radicado en el Barrio Río Abajo del término municipal de Vega Baja, compuesta de cuarenta y ocho punto noventa y una cuerdas (48.91 cdas.) de terreno, en lindes: por el NORTE, con la carretera Número Dos entre Vega Baja y Vega Alta y con solar de Manuel Dorna, antes ahora con la carretera estatal Número Ciento Cincuenta y Cinco (Calle Betances) y terrenos del Municipio de Vega Baja, en doscientos cuarenta punto noventa y ocho metros (240.98); por el SUR, con la colonia Vereda de la Sucesión de M. Francisco Otero, antes ahora con la Autoridad de Tierras en ciento sesenta y nueve punto noventa y dos metros (169.92) y Ramón Rivera, en ochenta y seis punto ochenta metros (86.80), por el ESTE, terrenos de María de las Mercedes González Rodríguez y Sucesión Maysonet, antes, ahora con la Carretera Estatal Número Seiscientos Setenta y Cuatro en trescientos cincuenta y cinco punto doce metros (355.12) y con Ramón Rivera, en doscientos ochenta y dos punto cinco metros (282.5) y por el OESTE, con el solar de Manuel Dorna y terrenos de Vega Baja Fruit Company, antes, ahora con Barrio Pueblo del Municipio de Vega Baja, en doscientos cincuenta punto dieciocho metros (250.18) y Sucesión Casanova en cuatrocientos cuarenta y siete (447.00) metros.

—De esta finca se han practicado varias segregaciones sin que del Registro conste descrito su remanente.

—Inscrita al folio 106 del tomo diecisiete (17) de Vega Baja, finca número setecientos ochenta y uno (781), Registro de la Propiedad de Bayamón, Sección Segunda.

RUSTICA: Predio de terreno radicado en el Barrio Río Abajo de Vega Baja, constante de veintiuna punto ochenta y siete cuerdas (21.87), en lindes: por el NORTE, con la Carretera Estatal Número Dos entre Vega Baja y Vega Alta, antes ahora Carretera Estatal Número Ciento Cincuenta y Cinco (Calle Betances) en doscientos treinta y uno punto cuarenta y ocho metros (231.48), por el SUR, con la Colonia Vereda de Finlay Waymouths and Company, antes, ahora con Autoridad de Tierras, en doscientos veintinueve punto treinta y un metros (229.31); por el ESTE con Andrés Avelino González Rodríguez, antes ahora con Centro Comercial Plaza Vega Baja y Sector Arenales, en cuatrocientos trece punto noventa y ocho metros (413.98) y por el OESTE, con María de las Mercedes y María Josefa González Rodríguez, en trescientos cincuenta y siete punto setenta y cinco metros (357.75).

—Inscrita alfolio setenta y ocho (78) del tomo ocho (8) de Vega Baja, Finca Número doscientos setenta y cinco (275), Sección Cuarta de Bayamón.

RUSTICA: Finca radicada en el Barrio Río Debajo de Vega Baja compuesta de diez cuerdas (10.00) de terreno en lindes por el NORTE, con la carretera número dos, entre Vega Baja y Vega Alta, antes, ahora Carretera Estatal (Calle Betances Número Ciento Cincuenta y Cinco) en sesenta y seis punto diez metros (66.10); por el SUR, con al Colonia Vereda de la Sucesión M. Francisco Otero, antes, ahora con la Autoridad de Tierras en trescientos cuarenta y siete punto diez metros (347.10), por el ESTE, con José Antonio González Rodríguez, hoy su Sucesión en trescientos cincuenta y siete punto setenta y cinco metros (357.75) y por el OESTE, con camino vecinal La Vereda, antes ahora carretera Estatal Número Seiscientos Setenta y Cuatro en trescientos cincuenta y tres punto ochenta metros (353.80).

—De esta finca se han practicado varias segregaciones sin que del Registro conste descrito su remanente.

—Inscrita alfolio ciento sesenta (160) del tomo veinte (20) de Vega Baja, Finca número Ochocientos Noventa y Seis (896), Sección Cuarta de Bayamón. ”

*1002
Surge de autos que el 9 de mayo de 2002 el TPI (Hon. Carlos de J. Rivera Marrero) ordenó la venta en pública subasta de las 80.70 cuerdas regístrales que componen la suma de las tres fincas y en dicha resolución también dispuso:

2. Le reconocemos a los interventores Elíseo Morales y Maribel Mena un crédito equivalente al 78.54% del precio mínimo de la finca a ser subastada según determinado por nosotros de dos millones de dólares. No obstante, reconocemos que los demandantes alegan que los interventores le adeudan $1,548,737.00 del principal, intereses al 9% más otras partidas reclamadas en las mociones. (Énfasis suplido)

3. Se ordena la ejecución de la sentencia dictada en este caso. La finca objeto del mismo será vendida en pública subasta al mejor postor. El precio mínimo de dicha finca se establece en dos millones de dólares. ”

Se le reconoce a los interventores Elíseo Morales y Maribel Mena un crédito montante a $1,570,800.00. 
Así las cosas, consta del expediente ante nos que el 4 de septiembre de 2003 se celebró una vista ante una tercera juez en la sala (Hon. Sonia Vélez Colón) que con posterioridad produjo la resolución y orden del 6 de febrero de 2004, en la que el TPI ordenó tasar nuevamente las tres fincas señaladas con propósito de proceder a su venta en pública subasta, conforme a lo antes ordenado en forma ya final y firme en la sentencia del 14 de junio de 2000. No obstante, ejecutándose la sentencia tres años y medio luego de su dictamen, es menester ajustar al valor en el mercado el precio mínimo de subasta. Es de recordar que la sentencia no impone precio mínimo de subasta pública y que el momento de la valoración del caudal relicto, en todo caso, es el contemporáneo a la partición y no ningún otro. Efraín González Tejera, Derecho de Sucesiones, Tomo I, Ed. U.P.R., 2001, pág. 486.
Tasadas las fincas nuevamente, el TPI ordenó proceder a la venta en pública subasta mediante orden del 27 de agosto de 2004 por un precio mínimo de $3,664,000.00 y no el de dos millones de dólares señalado en la ya citada resolución del 9 de mayo de 2002.
Mediante resolución y orden del 2 de diciembre de 2004, el TPI (Hon. Luisa M. Colom García) dispuso lo siguiente:

“En resolución del 9 de mayo de 2002, este Tribunal ordenó la venta de las propiedades a través de la celebración de pública subasta, reconociendo un crédito a los interventores, Elíseo Morales y Maribel Mena equivalente al 78.54% del precio de las propiedades.

Luego de un difícil proceso y reflexionando sobre el asunto en Resolución y Orden del 6 de febrero de 2004, el Tribunal mantuvo lo dispuesto en la Resolución del 9 de mayo de 2002.

Posteriormente se nos ha presentado nuevamente solicitud para autorizar la venta directa y otros extremos, que incluye dejar sin efecto la Resolución de fecha 9 de mayo de 2002.

Luego de un ponderado estudio del expediente, celebrada vista argumentativa el 28 de octubre del corriente, este Tribunal no puede incurrir en error al resolver otra cosa que sostener y mantener la Resolución de fecha 9 de mayo de 2002. Hace mucho tiempo que fue dictada, es final y firme, es momento que esa norma clara sea ejecutada. Aténgase. ”

De la resolución y orden del 2 de diciembre de 2004, la Sucesión González recurrió mediante certiorari en la causa del epígrafe y levantó como error lo siguiente:

*1003
“Erró el Hon. Tribunal de Primera Instancia en su resolución y orden de 2 de diciembre de 2004 mediante la cual concluyó que mediante Resolución y Orden de 6 de febrero de 2004, la Hon. Juez Sonia I. Vélez Colón “mantuvo lo dispuesto en la Resolución del 9 de mayo de 2002 ”, y en consecuencia erró el TPI al dejar sin efecto tanto la sentencia dictada el día 14 de junio de 2000 por la Hon. Sagebien Raffo, como la referida resolución de 6 de febrero de 2004, como la orden de ejecución de sentencia y mandamiento expedidos también por la Hon. Vélez Colón el día 27 de agosto de 2004. ”

Atendido el reclamo de los recurrentes y en garantía de nuestra jurisdicción, mediante Resolución y Orden del 16 de diciembre de 2004, dispusimos lo siguiente:

“Los recurrentes exponen que los interventores Morales-Mena intentan cobrar como crédito a su favor y en ejecución de sentencia en el caso DAC1999-1252, un dictamen que ya no está vigente y que de ser real se está litigando otro pleito independiente (DCD2003-1725) (504) ante el mismo foro de primera instancia.

Atendido lo expuesto y como medida cautelar en salvaguarda de nuestra jurisdicción, se paraliza cualquier trámite de ejecución de sentencia a favor de los interventores Morales-Mena hasta ulterior orden del Tribunal.

Se concede a la parte promovida en la petición de certiorari del epígrafe término de 30 días para exponer su posición. ” Regla 37 del Reglamento del Tribunal de Apelaciones, 2004 J.T.S. 112. (Énfasis suplido)
B
Consta en autos que el 9 de diciembre de 2004, los interventores Elíseo Morales García y Maribel Mena Meléndez se acogieron a la protección del Capítulo 11 de la Ley de Quiebra, 11 U.S.C. sees. 1101-1147, en el expediente 04-12461 ante el Tribunal de Quiebra de los Estados Unidos para el Distrito de Puerto Rico. Informaron de ello en autos mediante “Moción Informativa y Solicitud de Paralización” radicada el 22 de diciembre de 2004, en la que también solicitaron se detuvieran los procedimientos en la causa del epígrafe tanto en apelación como ante el foro de primera instancia, debido a que “.... los comparecientes tienen un interés propietario en la finca objeto de la presente demanda y como tal, dicha finca es parte del caudal de los comparecientes, el cual no puede ser objeto de ningún acto de posesión y/o control según la sección del Código de Quiebra anteriormente esbozado”. Obviamente se refieren al 78.54% del precio de subasta, que en la Resolución del 9 de mayo de 2002, por primera vez en autos, el Juez Rivera Marrero “reconoce” a los Interventores esposos Morales-Mena “del precio mínimo de la finca a ser subastada”.
Finalmente, mediante “Moción en Oposición a Moción Informativa y Solicitud de Paralización”, la Sucesión González comparece en autos el 7 de enero de 2005, para informamos que el 13 de enero de 2005, el TPI (Hon. Luisa M. Colom García) dictó orden en la que dispuso de la siguiente forma:

“A tenor con orden de paralización emitida por el circuito y a quiebra de los interventores, se declara la nulidad de los procedimientos posteriores al 17 de diciembre de 2004. Ordenamos se devuelva la cuantía consignada y se remita asunto al tribunal de quiebra para su atención conforme resolución en este caso. ”

Habida cuenta que las fincas fueron vendidas en pública subasta, aunque de autos no se nos informa la fecha, se unió vía “Tercera Moción Urgente en Auxilio de Jurisdicción” presentada el 24 de enero de 2005, copia de la Escritura Núm. 12 de Venta Judicial otorgada el 23 de diciembre de 2004 por el Alguacil del Tribunal ante el notario Antonio Bauzá Torres, a la cual no se le unieron los apéndices, en específico, el “E” (Acta de Subasta), por lo que tampoco conocemos la fecha en que se verificó la referida subasta.
En dicha tercera moción urgente en auxilio de jurisdicción, también se acompaña copia de “Moción Urgente-Solicitando Nulidad de Subasta” presentada ante el TPI el 22 de diciembre de 2004 por la representación legal de los interventores Elíseo Morales García y su esposa Maribel Mena Meléndez y la sociedad legal de gananciales *1004 compuesta por ambos, en que reiteran al foro de primera instancia, lo ya señalado al efecto de que los esposos Morales-Mena se encuentran acogidos al Capítulo 11 de la Ley de Quiebra desde el 9 de diciembre de 2004, por lo que entienden que la subasta del 20 de diciembre de 2004 resultó nula en derecho, en tanto y en cuanto allí se dispuso de interés propietario de los interventores Elíseo Morales García y su esposa Maribel Mena Meléndez y la sociedad legal de gananciales compuesta por ambos.
Exposición y Análisis
I
Es importante recapitular que nuestra resolución y orden del 16 de diciembre de 2004 en respuesta a “Moción en Auxilio de Jurisdicción presentada el 15 de diciembre de 2004, sólo paralizó, como medida cautelar en salvaguarda de nuestra jurisdicción, “ ...cualquier trámite de ejecución de sentencia a favor de los interventores Morales- Mena...” en la causa DAC1999-1252 ante el TPI. En esta etapa del procedimiento no se nos ha establecido que los interventores Morales-Mena estén ejecutando o tengan derecho a ejecutar contra la Sucesión González crédito por sentencia alguno.
Como se sabe, el “automatic stay”, 11 USC 362, sólo atiende a acciones de terceros dirigidas contra el ente protegido por la Corte de Quiebra, en este caso Elíseo Morales García y Maribel Mena Meléndez y la sociedad legal de gananciales compuesta por ambos y para nada impide que estos últimos actúen en defensa de lo que alegan ser sus derechos.
Recientemente, en la causa KLAN-2004-01438 (Hon. Pabón Chameco, Jueza), se dispuso sobre el tema y en aras de la economía procesal aquí transcribimos en su parte pertinente:
“El propósito fundamental de todo procedimiento de quiebra es que el deudor tenga oportunidad de comenzar su vida económica nuevamente, mientras se protegen los intereses de los acreedores, distribuyendo entre éstos los activos del deudor de acuerdo al Código de Quiebra. ” (Citas omitidas). Allende v. García, 150 D. P.R. 892, 898-899 (2000).
El efecto principal que provee la presentación de una petición de quiebra ante el Tribunal de Quiebras de los Estados Unidos es la paralización automática (“automatic stay ”) de cualquier procedimiento llevado en contra del deudor o de su propiedad. Véase, Morales v. Clínica Femenina de P.R., 135 D.P.R. 810, 820 (1994) (Sentencia), nota al calce núm. 5.
La paralización automática está tipificada en la Sec. 362(a) del Código de Quiebra, 11 U.S.C. sec. 362(a). De su amplio lenguaje se colige que el ámbito de su aplicación se extiende, prácticamente, a cualquier acción formal o informal, llevada en contra del deudor. 5, Collier on Bankruptcy ¶362^), (Lawrence P. King ed., 15th ed., 1992), p. 362.13.
A tenor de dicha disposición, las instancias sobre las cuales se extiende la paralización automática son las siguientes:

“1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

2) the enforcement, against the debtor or against property of the estate, or a judgment obtained before the commencement of the case under this title;

*1005
3) any act to obtain possession of property of the estate or of property from the estate;

4) any act to create, perfect, or enforce any lien against property of the estate;

5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

7) any setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor. ” (Enfasis nuestro).
11 U.S.C.A. §362(a).
Valga señalar que el beneficio de la paralización automática no sólo le cobija al deudor, sino también a los acreedores, cuyos intereses quedarán protegidos mediante la prevención del desmembramiento de los activos del deudor por parte de acreedores individuales. Collier on Bankruptcy, op. cit., p. 362-14.
Es necesario apuntar que el Código de Quiebra establece contadas excepciones a la paralización automática otorgada al quebrado. Véase, See. 362 (b), supra, 11 U.S.C.A. §362 (b).
A pesar de la amplitud del lenguaje utilizado bajo la See. 362 (a), sus términos son claros al especificar que la paralización se dará sólo en los procedimientos en contra del deudor (“against a debtor”). Maritime Electric Company, Inc. v. United Jersey Bank, 959 F. 2d. 1194, 1204 (3rd Cir. 1991), citando a Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F. 2d. 446, 448 (3rd Cir. 1982). De esta manera, la orden de paralización automática no exime las acciones presentadas por el deudor, ya que las mismas podrían resultar en beneficio para el caudal en quiebra. (“The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.”) Maritime Electric Company, Inc. v. United Jersey Bank, supra; Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp, supra; refiriendo, además, a In re: Barry Estates, 812 F. 2d. 67, 71 (2nd Cir.) cert. denied, 484 U.S. 819 (1987); Martin-Trigona v. Champion Fed. Sav. & Loan Assoc., 892 F. 2d. 575, 577 (7th Cir. 1989).
Igual conclusión se allegó en el caso Shah v. Glendale Federal Bank, 52 Cal. Rptr. 2d 417, Cal.App. 2 Dist., 1996. Mediante dicha decisión, el Quinto Circuito de California interpretó el lenguaje de la See. 362 (a), supra, y resolvió que a la luz del interés que persigue la paralización automática, sería un contrasentido que la paralización se impusiera a los casos instados por el deudor. Asimismo, se dispuso que: “[t]he federal circuit courts have consistently held, relying on the language of the automatic stay provision and the policy underlying it, that section 362(a)(1) is applicable only to actions against the debtor; not to actions brought by the debtor.” Shah v. Glendale Federal Bank, supra, pág. 1,376.
II
Como se sabe, sentencia es sólo la parte dispositiva, en la cual se adjudican y definen finalmente las controversias.
La Regla 43.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.1, dispone que “el término ‘sentencia’ incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la *1006 cuestión litigiosa de la cual peda apelarse”.
En esta jurisdicción se ha resuelto que “una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma tal que no queda pendiente nada más que la ejecución de la sentencia”. Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986); Cortés Román v. E.L.A., 106 D.P.R. 504, 509 (1977); Dalmau v. Quiñones, 78 D.P.R. 551, 556 (1955). Véase además Medio Mundo, Inc. v. Rivera, 154 D. P.R. _ (2001), 2001 J.T.S. 88. La sentencia es la parte dispositiva de un dictamen, en la cual se adjudican y definen finalmente las controversias del caso y derecho de las partes, de manera que dicho dictamen permita su apelación o revisión, Ramos v. Colón, 153 D.P.R. _ (2001), 2001 J.T.S. 33, y pueda ser ejecutable. Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 656-57 (1987); Díaz v. Navieras de P.R., 118 D.P.R. 297 (1987).
La resolución, sin embargo, sólo pone fin interlocutoriamente a un incidente dentro de un litigio y no adquiere carácter de cosa juzgada, por lo que puede ser variada en cualquier momento posterior en el trámite de la causa antes de que se dicte la correspondiente sentencia. Rodríguez v. Tribunal Municipal y Ramos, 74 D.P.R. 656, 664 (1953). Por tanto, la resolución del 9 de mayo de 2002 nunca pudo adquirir carácter de final y firme.
Conforme a dicha norma, en autos del TPI sólo existe la sentencia dictada el 14 de junio de 2000 (Hon. Olivette Sagebien Raffo), en la que en forma definitiva se reconoció e identificó tanto el caudal relicto a partir como los coherederos titulares en pro-indiviso de la herencia yacente. También consta que tal dictamen advino final y firme y fue ejecutado vía pública subasta.
No consta en autos cuáles, si alguno, de los herederos reconocidos en la sentencia del 14 de junio de 2000, cedió o vendió sus derechos y acciones alícuotas a un tercero, si es que eso ha ocurrido. Por tanto, no es posible concluir en autos que los interventores Morales-Mena tengan una participación pro-indivisa en las mencionadas tres fincas o en el “...precio mínimo de la finca a ser subastada...”, máxime cuando el TPI también en la misma resolución señaló que alegadamente “...los interventores le adeudan $1,548,737.00 del principal, intereses al 9% más otras partidas reclamadas en las mociones” a la sucesión demandante; sumas que entendemos también alegadamente responden al precio no pagado por el 78.54% del pro-indiviso.
Para que tal determinación tomase vigencia en autos era preciso sustituir a los interventores por los coherederos que cedieron sus derechos y acciones hereditarias, según reconocido en la sentencia del 14 de junio de 2000, lo que no se ha hecho y el litigio todavía arropa dicho asunto.
III
De las constancias de autos, también concluimos que el “reconocimiento” a favor de "... los interventores Elíseo Morales y Maribel Mena [respecto] a un crédito equivalente al 78.54% del precio mínimo de la finca a ser subastada...” a que hizo referencia la Resolución del 9 de mayo de 2002 (Hon. Carlos de J. Rivera Marrero) casi dos años luego de dictada la sentencia del 14 de junio de 2000 en la causa DAC1999-1252 ante el TPI, (al ordenar su ejecución) ha de obedecer a cierta “OPCION DE COMPRAVENTA DE PARTICIPACIÓN HEREDITARIA EN IMUEBLES” que un número de coherederos alegadamente acordó con los interventores esposos Morales-Mena (Apéndice, págs. 61-78).
Dicho documento reconoce que tal opción está supeditada a otro “Contrato de Opción de Compra” sobre las propiedades objeto del presente contrato, según señalado en su página 10 (Ap., pág. 70). Es decir, en virtud del acuerdo de opción a compra de porciones pro-indivisas hereditarias, respecto al cual no consta en autos certeza de haber sido ejercida en tiempo la opción y consumada en compraventa real y efectiva, no es posible sustituir y reconocer a los esposos Morales-Mena como coherederos en autos al efecto de la partición.
El atípico contrato de opción a compra es un derecho de carácter personal incapaz de convertirse en derecho real de propiedad a menos que una vez ejercitada en tiempo hábil se convierta en mutua promesa de compraventa *1007 y luego se verifique y consuma el contrato de compraventa, mediante las respectivas prestaciones y aceptaciones. Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 810 (1975); Jordan Rojas v. Padró González, 103 D.P.R. 813, 817 (1975); Del Toro v. Basini, 96 D.P.R. 676, 681-682 (1968); Pérez v. Sanpedro, 86 D.P.R. 526- 529-530 (1962); Rossy v. Trib. Superior, 80 D.P.R. 729 (1958). Tal promesa no confiere título de dominio, García v. De Jesús, 79 D.P.R. 147, 152 (1956).
Más aún, cuando la optataria es una comunidad, como aquí ocurre, no existirá opción de compra sobre la cosa hasta que comparezca al contrato de opción el cien por cien de los comuneros. Ello es así, debido a la naturaleza del pro-indiviso, respecto al cual ninguno de los co-propietarios puede disponer u obligar a la cosa en comunidad en forma individual. Cavaza v. Registrador, 116 D.P.R. 861, 866 (1986).
Conforme a lo señalado, no es posible reconocer a favor de los esposos Morales-Mena título propietario alguno sobre las ya mencionadas fincas. Sus únicos titulares dominicales en pro-indiviso son los ya reconocidos herederos mencionados en la sentencia dictada el 14 de junio de 2002 en la causa DAC-1999-1252 (Hon. Olivette Sagebien Raffo), salvo que realmente se establezca ante el TPI que alguno de ellos cedió a un tercero su condición de coheredero en el pro-indiviso hereditario, en cuyo caso, tal cesionario sólo advendrá en miembro de la comunidad hereditaria en sustitución y en la misma cuota que lo fue el cedente. Soc. de Gananciales v. Registrador, 151 D.P.R. 315 (2000).
Esto último es lo que aparenta que en autos se menciona que ahora está en litigio en la causa DCD2003-1725 ante el TPI.
Por lo tanto, es necesario dejar sin efecto la parte de la Resolución del 9 de mayo de 2002 en que se reconoce "... un crédito equivalente al 78.54% del precio mínimo de la finca... ” a favor de los interventores e igual la parte de la Resolución del 2 de diciembre de 2004, que lo menciona por referencia, como también quedó sin efecto el precio mínimo de subasta, que mediante la orden del 27 de agosto del 2004 varió de $2,000,000.00 a $3,664.000.00.
Actualmente, las fincas se han convertido en dinero depositado en la cuenta del Tribunal pendiente a su próxima distribución (acto administrativo) entre los herederos con derecho a hijuelas, y en su caso, a favor de los cesionarios que demuestren ante el TPI haber sustituido a algún coheredero.
IV
Según surge de autos en el expediente DAC1999-1252, los esposos Morales-Mena afirman su razón de pedir en que en un momento contrataron la referida “opción de compra” sobre las tres fincas señaladas con un grupo de los coherederos. Resulta entonces claro que ello ratifica que los esposos Morales-Mena tampoco han advenido en titulares de algún derecho personal sobre ninguno de los tres inmuebles mencionados, mucho menos tenedores de derechos reales sobre alguna de las mencionadas fincas. Aun considerando la citada Resolución del 9 de mayo de 2002 como dictamen válido, final y firme, que no lo es, sería menester señalar que con relación a los interventores Morales-Mena sólo, ello se refiere a interés en el resultado o “precio” de la subasta, no en las fincas in rem.
Como se sabe, la comunidad hereditaria surge cuando son más de uno los herederos, Art. 326 Ce. 31 L.P.R.A. see. 1271, y permanece mientras no se efectúe la partición. Soc. de Gan. v. Registrador, supra; Cintrón v. Cintrón, 120 D.P.R. 30 (1987).
Sólo la partición es capaz de conferir a los herederos la propiedad exclusiva de los bienes que compone una herencia, 31 L.P.R.A. see. 2901, para lo cual es necesario el concurso de voluntades de todos los coherederos o la disposición judicial para liquidar y partir, como aquí ocurre. Gutiérrez v. Registrador, 114 D.P.R. 850, 857 (1983), Arts. 1011 y 1012 Cc. 31 L.P.R.A. sees. 2877-2878. La venta o la cesión de derechos y acciones *1008 hereditarias, mucho menos la opción al respecto, no es equivalente al acto y el efecto distributivo que concretiza la partición hereditaria, acto que precisa lo que a cada cual corresponde. Soc. de Gananciales v. Registrador, supra.
y
La causa DAC1999-1252 constituye un trámite de liquidación y partición de herencia que sólo atañe a los miembros judicialmente reconocidos en las tres sucesiones de los causantes. En tal expediente sólo cuentan con legitimidad activa (“standing”) los herederos reconocidos y a los acreedores contra el caudal sujeto a liquidación, no respecto a los acreedores de los coherederos, Art. 559 Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2364.
A favor del acreedor de un coheredero se reconoce el derecho de ser informado respecto a los cómputos y trámites particionales para así: (1) saber cuándo podrán actuar respecto a lo que toque como hijuela al coheredero contra el cual se tenga ya alguna acreencia judicialmente reconocida en otra causa, y (2) auscultar sobre la idoneidad de la hijuela que ha de recibir el coheredero deudor. Art. 1036 Ce., 31 L.P.R.A. see. 2932.
Nuestra resolución y orden en auxilio sólo alcanza a prohibir que sobre dineros consignados en el tribunal y pertenecientes a la comunidad hereditaria en partición se cobrase alguna deuda reclamada por los interventores contra algún coheredero o contra el caudal, ello hasta que en salvaguarda de nuestra jurisdicción podamos entender en los méritos de este litigio.
Por tanto, no existe ni existió en autos prohibición alguna respecto al proceso de ejecución en cuanto a la venta en pública subasta ordenada en la sentencia del 14 de junio de 2000 y canalizada finalmente en las resoluciones del 6 de febrero y 27 agosto de 2004. Por tal razón, la orden dictada por el hermano foro de primera instancia (Hon. Luis M. Colom García) el 13 de enero de 2005 (que conocimos mediante la ya señalada “Moción en Oposición a Moción Informativa y Solicitud de Paralización” presentada el 7 de enero de 2005 por la Sucesión González), no puede ampararse en nuestra Resolución y Orden del 16 de diciembre de 2004.
En resumidas cuentas: (1) nuestra resolución y orden del 16 de diciembre de 2004, no impide la subasta ni anula la venta judicial efectuada ante el TPI el 20 de diciembre de 2004; (2) en tanto y en cuanto los esposos Morales-Mena no cuentan en autos, ni han demostrado de otra forma y manera ser titulares de derecho real alguno en plena pfopiedad o en pro-indiviso sobre ninguna de las tres fincas números 781, 275 y 896 antes mencionadas, objeto de partición de herencia por vía de venta judicial y tampoco ser acreedores del caudal hereditario, por lo que carecen de legitimidad activa en este trámite.
No advertimos cómo el trámite de esta causa pueda quedar afectado por la causa número 04-12461 ante el Tribunal de Quiebra de los Estados Unidos para el Distrito de Puerto Rico, salvo que dicho Foro Federal dicte resolución u orden en contrario, al amparo de su jurisdicción exclusiva. De autos, sólo logramos reconocer que mediante pleito por separado, en la ya señalada causa DCD2003-1725, los esposos Morales-Mena reclaman contra la sucesión o alguno de sus miembros, alegados derechos de carácter personal que no constan todavía adjudicados; acción ante el TPI que tampoco está prohibida por la radicación en Quiebra.
Es muy significativo que en la misma resolución del 9 de mayo de 2002 (Hon. Carlos de J. Rivera Marrero) en que por primera vez se menciona en autos ante el TPI el “crédito equivalente al 78.54%” a favor de los esposos “Morales-Mena”, también se reconoce “... que los demandantes alegan que los interventores le adeudan [a la Sucesión González] $1,548,737.00 del principal, intereses al 9% más otras partidas reclamadas en las mociones”. Deducimos y antes señalamos, que tal suma de dinero más intereses al 9% es el precio del 78.54% alegadamente no pagado a los herederos que supuestamente componen esa parte del caudal en pro-indiviso y entonces próximo a subasta pública para liquidar el caudal. Por ello, hay que primeramente precisar si realmente hubo la compraventa de tales acciones y derechos hereditarios, en caso de que realmente medió una opción válida y fue ejercitada en tiempo, lo que está todavía en litigio.
*1009 Como se sabe, la división de una herencia no es un acto de riguroso dominio o traslativo de título dominical, sino de mera administración, cuya sola naturaleza es declarativa. Osorio v. Registrador, 113 D.P.R. 36, 37-38 (1982); Díaz v. Registrador, 107 D.P.R. 233, 235-236 (1978); Shivell v. Barber y Boscio, 92 D.P.R. 400, 409 (1965).
Aun en caso de que los interventores Morales-Mena demuestren realmente que sustituyen al 78.54% de los herederos, especificándose en autos por nombre y porciento de coparticipación, el proceso de subasta no les afecta, pues desde un principio a lo que tienen derecho es a una cuota alícuota en el producto de la subasta, puesto que nunca podían así adquirir ni han adquirido participación concreta in rem en ninguna de las tres fincas descritas. Soc. de Gananciales v. Registrador, supra.
Por tanto, entendemos que el hermano foro de primera instancia incidió en el dictamen del 13 de enero de 2005 al decretar la nulidad de la subasta del 20 de diciembre de 2004 y ordenar la devolución del monto de la buena pro. Nada en autos justifica tal dictamen, por lo que aquí lo revocamos.
Dictamen
Conforme a lo aquí señalado, expedimos el auto de certiorari solicitado y resolvemos de la siguiente forma:

“1) revocamos la resolución y orden del TPI de fecha 13 de enero de 2005 en que se decretó la nulidad de la subasta efectuada el 20 de diciembre de 2004 y ordenó la devolución del monto de la buena pro.

2) Toca al TPI resolver qué participación en pro-indiviso, si alguna, corresponde a los interventores esposos Morales-Mena en el caudal relicto combinado, ahora líquido en la cuenta del Tribunal. Para ello tendrá que atender y resolver respecto a la ya señalada y todavía en autos imprecisa cesión de derechos y acciones del alegado 78.54% de las participaciones hereditarias, bien en la causa DAC1999-1252 o en la señalada DCD2003-1725 ante el TPI. Ello también implica atender y resolver si realmente los esposos Morales-Mena adquirieron un derecho de opción sobre dicho 78.54% de acciones y derechos sobre los caudales señalados, si ejercitaron la opción en tiempo hábil y si efectuaron las contraprestaciones necesarias para la subsiguiente compraventa de derechos y acciones hereditarias en pro-indiviso y proceder a la sustitución hereditaria. ”

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Mildred Ivonne Rodríguez Rivera
Secretaria General Interina
ESCOLIOS 2005 DTA 40
1. Si los interventores no le pagan a los demandantes sus créditos a tenor con lo pactado entre ellos, los últimos tienen que presentar un pleito independiente del de epígrafe para hacer valer sus derechos. (Énfasis suplido) (Ap„ págs. 82 y 83).
2. Deducimos entonces que la subasta de las tres fincas números 781, 275 y 896 antes descritas, se verificó el 20 de diciembre de 2004.
3. Segundo párrafo de la Resolución del 9 de mayo de 2002, aquí citada a la página 3.