# 2006 DTA 12

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIONAL JUDICIAL DE ARECIBO - PANEL VIII**

LABORATORIO CLÍNICO Y BACTERIOLÓGICO DEL NORTE
Proponente-Recurrido

v.

LABORATORIO CLÍNICO Y BACTERIOLÓGICO PLAZA DEL NORTE;
LABORATORIO CLÍNICO Y BACTERIOLÓGICO DEL BARRIO CORCOVADO
Opositores-Recurrente

Núm. KLRA-05-00675

San Juan, Puerto Rico, a 7 de noviembre de 2005

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Laboratorio Clínico y Bacteriológico Plaza del Norte, solicita que revoquemos la resolución emitida el 20 de julio de 2005, archivada en autos copia de su notificación el 21 del mismo mes y año, por la Hon. Secretaria de Salud, Dra. Rosa Pérez Perdomo, en la que se otorgó al recurrido, Laboratorio Clínico y Bacteriológico del Norte, el Certificado de Necesidad y Conveniencia (CNC), solicitado para el establecimiento de un laboratorio clínico en el Municipio de Hatillo.

### Hechos

El 1 de septiembre de 2004, el Sr. Rolando Torres González, en representación del Laboratorio Clínico y Bacteriológico del Norte (Sr. Torres), presentó ante el Departamento de Salud (Departamento) una solicitud para obtener un Certificado de Necesidad y Conveniencia (CNC) para el establecimiento de un laboratorio clínico a ser ubicado en el Medical Building Plaza, Carretera 493, k.m. 0.5, Barrio Carrizales, Hatillo, Puerto Rico. En oposición presentaron escrito ante el foro administrativo los laboratorios clínicos Plaza del Norte y Corcovado, este último en calidad de interventor por encontrarse fuera de la milla radial del propuesto laboratorio.

La vista administrativa de rigor fue conducida los días 30 y 31 de marzo de 2005 ante la Lcda. Liza M. Ramírez de Arellano, Oficial Examinadora del Departamento. Mediante resolución del 20 de julio de 2005, la Secretaria de Salud acogió en su totalidad las recomendaciones del Informe de la Oficial Examinadora y otorgó el CNC solicitado.

No conforme con dicha determinación, el Laboratorio Plaza del Norte solicitó la reconsideración ante el foro administrativo, la que fue rechazada de plano. En consecuencia, presentó el recurso de revisión del epígrafe en el que imputa al foro administrativo incidir de la siguiente forma:

*"1. Erró el Departamento de Salud al no emitir múltiples hechos probados más allá de duda razonable mediante la prueba testifical, documental y pericial, hechos que si el departamento los hubiera determinado, no podían haber sustentado el resultado de la Resolución recurrida, a saber, la concesión del CNC al laboratorio proponente. Además, de haber emitido esos hechos, otras determinaciones de hechos de la Resolución recurrida no se podrían sostener.*

*2. Erró el Departamento de Salud al dar una interpretación legal incorrecta a los criterios para la concesión de un CNC establecidos en el Reglamento 112 de dicha agencia, y al utilizar dicha interpretación incorrecta para adjudicar el caso de autos. De sostenerse esa interpretación legal incorrecta (y su aplicación al caso de autos), el Reglamento 112 de la agencia, según utilizado en el caso de autos, sería ultra vires por ir en contra de los criterios establecidos en la Ley Núm. 2 de 7 de noviembre de 1975."*

Junto con la presentación del Recurso de Revisión, pero en escrito por separado, la parte recurrente solicitó acudir a la reproducción de la prueba oral ante el foro administrativo. A tal respecto expuso:

*"[...]3. La agencia recurrida ya había autorizado la regrabación de la vista administrativa celebrada en este caso (Aps. XXV y XXVI) del recurso de epígrafe). Sin embargo, el abogado suscribiente muy respetuosamente informa a este Honorable Tribunal que en la agencia recurrida (Departamento de Salud) nunca se nos proveyó la regrabación porque alegadamente ésta no tenía el equipo para hacer la misma. Nos vimos obligados a escuchar el original de la regrabación, en la misma agencia. No obstante, por la presente, bajo las Reglas 66 y 76 del Reglamento de este Honorable Tribunal, muy respetuosamente le solicitamos que le ordene a la agencia recurrida (Departamento de Salud) que nos provea la regrabación de la vista administrativa, pero que sea la agencia la que corra con el costo de obtener el equipo necesario para ello, de modo que la parte Recurrente pague por lo que en justicia le corresponde, a saber, las cintas en blanco y los costos del proceso de regrabación. [...]"*

La parte recurrente no ha dado cumplimiento a lo dispuesto en la Regla 66(B) del Reglamento del Tribunal de Apelaciones, en tanto y en cuanto no sustancia en forma alguna la necesidad de recurrir la prueba oral ante la examinadora, ni hace referencia específica a cuestiones planteadas, contenido específico de testimonios, salvo señalar que escuchó la grabación de toda la prueba, pero no se le entregó copia de la misma. La parte opositora presentó su alegato. Estudiado el asunto no entendemos que sea imprescindible accesar a la prueba oral para concluir y disponer. El Estado Libre Asociado (Departamento de Salud), mediante comparecencia especial, indicó que no era necesaria su comparecencia en autos, criterio con el que coincidimos. Con el beneficio de los respectivos alegatos, que incluye un extenso y detallado apéndice del récord administrativo, procedemos a resolver.

**Exposición y análisis**

**I**

- Debemos atender primeramente el segundo señalamiento de error, en el cual se ataca la interpretación brindada por el Departamento de Salud a su ley habilitadora y al Reglamento Núm. 112 de 20 de febrero de 2004.

La Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 LPRA sec. 334, *et. seq.,* conocida como *"Ley de Certificados de Necesidad y Conveniencia"* (Ley Núm. 2), se adoptó con el propósito de velar por la planificación ordenada de las facilidades y servicios de salud. De tal forma se faculta al Secretario de Salud a autorizar el establecimiento de nuevas facilidades de salud, siempre y cuando ello sea necesario y conveniente para la población a que dichas facilidades sirven y no se afecte indebidamente la oferta de tales servicios pre-existentes en el área. Se interesa así contribuir al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico. 24 LPRA sec. 334(e).

Al amparo de tal facultad dispuesta en ley, el Secretario de Salud aprobó el Reglamento Núm. 112 de 20 de febrero de 2004 (Reglamento 112), con el propósito de gobernar todo lo relativo al proceso de solicitud y otorgamiento de dichos CNC. El Reglamento establece, entre otras cosas, unos criterios generales (Artículo VI) y otros particulares (Artículo VII), a ser considerados por el Departamento al atender (expedir o denegar) las solicitudes de CNC para facilidades de salud.

Los criterios generales dispuestos en la Ley Núm. 2, reiterados en el Reglamento 112, son los siguientes:

*"1) La relación entre la transacción para la cual se solicita el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante.*

*(2) La necesidad actual y proyectada que tiene la **población a ser afectada por la transacción** contemplada de los servicios que se proveerán mediante la misma.*

*(3) La existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante.*

*(4) La relación entre el sistema de salud **operante en el área** y la transacción propuesta.*

*(5) En el caso específico de solicitantes de certificados de necesidad y conveniencia para el ofrecimiento de servicios de salud, el Secretario deberá considerar también los siguientes factores:*

*(a) La disponibilidad de recursos humanos y económicos para el rendimiento eficiente de esos servicios.*

*(b) El impacto que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del **área en donde los servicios habrán de prestarse.***

*(c) El porciento [sic] de la población del **área a ser servida** que tendrá acceso a los servicios propuestos. El Secretario deberá exigir que la solicitud indique el tiempo que el solicitante necesitara para hacer disponible el servicio o equipo objeto de la petición o realizar el gasto objeto de la transacción."* (Énfasis nuestro.) 24 LPRA sec. 334(b).

Por su parte, el Artículo VII del Reglamento 112 contiene los criterios particulares a tomar en consideración por el Secretario de Salud al evaluar cada solicitud de CNC para cada una de las 12 distintas facilidades o instituciones clasificadas por dicho artículo. Para un laboratorio clínico, los criterios particulares del acápite K el en Artículo VII, son los siguientes:

*"Se establece una norma de un laboratorio clínico por cada 5,000 habitantes para todos los municipios, excepto San Juan, Bayamón, Arecibo, Manatí, Ponce, Mayagüez y Humacao, para los cuales la norma será de 3,000 habitantes.*

*El Secretario de Salud podrá añadir municipios adicionales a esta lista de excepción, luego de una determinación de que esos municipios alcanzaron características en los servicios de salud que ofrecen, que justifican su inclusión, tales como la cantidad de hospitales en el municipio y la relación de médicos por población.*

***La ubicación se evaluará a base de la necesidad del área localizada dentro del radio de una (1) milla del laboratorio propuesto**, excepto en los casos del laboratorio de histopatología para el cual el área de servicio será la Sub-región.*

*1. Se considerará saturada el área de servicios si se sobrepasa del criterio de población residente aplicable. Entre los factores que se podrán considerar está: la densidad poblacional del área, **la población flotante**, según se define en el Artículo III, inciso 30, ▪ alguna, y las vías de acceso para llegar a la facilidad propuesta. Disponiéndose, que no se denegará el certificado por la saturación de otras áreas dentro del mismo municipio.*

*2. El proponente deberá demostrar, a satisfacción del Secretario, que podrá contratar el personal técnico necesario para cubrir el horario de servicio propuesto.*

*3. Se podrá tomar en cuenta al evaluar la solicitud, cómo comparan el horario de servicio, la sofisticación tecnológica y capacidad de los equipos y los planes médicos que ofrecerá el proponente, con los de las facilidades establecidas.*

*4. No se podrá autorizar el establecimiento de laboratorios clínicos adicionales en un área de servicio, hasta tanto se demuestre que la demanda, dentro de la milla radial, sobrepasa la oferta en aquella cantidad que sea suficiente para permitir la viabilidad del laboratorio propuesto."* (Énfasis nuestro.)

A la luz de tal derecho aplicable, el recurrente alega que incidió el Departamento de Salud al interpretar los criterios generales y particulares para evaluar una solicitud de CNC. Arguye que la evaluación de tales criterios no se circunscribe únicamente al radio de milla del laboratorio propuesto. Consecuentemente, argumenta que la agencia debió considerar los doce laboratorios clínicos ya establecidos en Hatillo, los diecinueve laboratorios localizados en Arecibo, muchos de los cuales colindan con el área donde ubicaría el laboratorio propuesto, para así aquilatar su efecto al momento de evaluar la necesidad y conveniencia del laboratorio propuesto. No le asiste la razón.

Del lenguaje utilizado en los criterios generales dispuestos en el Art. 3 de la Ley Núm. 2, *supra*, y que fueron reiterados en el Reglamento 112, *supra*, se colige que la evaluación de tales factores ciertamente se limitará al radio de una milla de la ubicación del laboratorio propuesto.

Específicamente, en el Art. 3, inciso 2, se cubre lo referente a la necesidad de *"la población a ser afectada"* por la transacción proyectada. 24 LPRA sec. 334b (2). Tanto la Ley Núm. 2, *supra*, como el Reglamento 112 definen el concepto *"persona afectada"*, en lo aquí relevante, como las facilidades de salud ubicadas *"en el área de servicio del proyecto"*. 24 LPRA sec. 334y (2). Por su parte, en los criterios generales se hace alusión al área de servicio, término definido en el Reglamento 112, *supra*, como sigue:

*"3. Área de servicio--Significa aquella área geográfica en el cual el proponente proyecte realizar sustancialmente la acción propuesta, y según se dispone en el artículo V, inciso 2(e) de este Reglamento."*

A su vez, el Artículo V, inciso 2(e) del Reglamento 112 dispone, en lo atinente, que:

*"(iv) Para el análisis de solicitudes para el establecimiento de[...] laboratorios clínicos [...] se considerará un **área equivalente a una milla radial, medida desde el centro de la estructura propuesta, como el área de servicio básica."*** (Énfasis suplido.)

Finalmente, y según lo antes citado, el Reglamento Núm. 112, *supra*, dispone que los criterios a ser tomados en consideración para los casos de laboratorios clínicos serán evaluados en función del área de servicio, que consiste del área localizada en el radio de una milla del laboratorio propuesto. Artículo VII, inciso (K) del mencionado Reglamento 112.

De lo anteriormente citado, se desprende con meridiana claridad que los criterios generales y particulares a considerar para otorgar o denegar una solicitud de CNC para el establecimiento de laboratorios clínicos, se evaluarán conforme lo establecido como oferta y demanda para tales servicios dentro del radio de una milla del laboratorio propuesto. Es aquí de señalar el principio hermenéutico de que cuando *"la ley es clara y libre de toda ambigüedad, no debemos menospreciar su letra con el pretexto de cumplir su espíritu."* Art. 14 del Código Civil, 31 LPRA sec. 14; *Cancio González, ex-parte*, 161 DPR ___ (2004), **2004 J.T.S. 54**; *Sucn. José Toro v. Sucn. Nicolás Toro*, 161 DPR ___ (2004), **2004 J.T.S. 45**. En el caso de marras, contamos con definiciones específicas y limitativas de los vocablos o frases en controversia, por lo que no hay cabida para dejar a un lado el lenguaje claro e inequívoco utilizado en tales disposiciones de ley.

En vista de ello, coincidimos con el correcto proceder del foro administrativo que evaluó la solicitud de CNC del recurrido, Laboratorio del Norte, en función del único laboratorio en el área de servicio del laboratorio propuesto (Laboratorio Plaza del Norte) y no como incorrectamente argumentó el recurrente para que se consideraran los doce (12) laboratorios clínicos ubicados en el Municipio de Hatillo y los diecinueve (19)

establecidos en Arecibo, todos fuera del mencionado radio de la milla. No se cometió el error señalado.

Atendido lo anterior, pasemos a considerar entonces el primer señalamiento de error.

## II

En el primer señalamiento de error, el recurrente alega que el Departamento de Salud incidió al omitir hacer determinaciones relativas a ciertos hechos probados, que de haber sido considerados por el foro administrativo no hubiera otorgado el CNC al recurrido.

Conforme señaláramos anteriormente, el Reglamento 112, *supra*, en su Art. VI, establece unas guías para regular el proceso de evaluación de solicitudes para el otorgamiento de los CNC y en lo pertinente dispone que en el proceso evaluativo el Secretario de Salud mantendrá la discreción necesaria para evaluar (caso a caso) dichos criterios, en aquella forma que mejor facilite la implantación de la ley.

En cuanto a dicha discreción, es menester aquí resaltar lo resuelto por nuestro más alto foro judicial en el caso *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, 149 DPR 121 (1999). Allí se aclaró la naturaleza jurídica del CNC, al igual que el estándar de revisión para las resoluciones emitidas por el Secretario de Salud, como sigue:

*"En decisiones previas de este Tribunal, hemos caracterizado la naturaleza jurídica del certificado de necesidad y conveniencia. Hemos resuelto que se trata de un mecanismo de planificación, mediante el cual el Secretario de Salud formula e implanta a la vez la política pública sobre los servicios de salud. Ruiz Hernández v. Mahiques, 120 DPR 80, 89 (1987). "El Secretario, al otorgar o denegar un certificado de necesidad y conveniencia, no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud". Id., a la pág. 88. "...el Secretario tiene facultad para reglamentar y adjudicar al mismo tiempo. La formulación de la política pública no se limita únicamente al mecanismo de reglamentación, sino que se extiende al de adjudicación". Id., a la pág. 86. Hemos señalado, además, que la decisión de otorgar o denegar un certificado de necesidad y conveniencia surge de un proceso evaluativo institucional, que culmina con la decisión personal del Secretario. Hosp. San Pablo v. Hosp. Hnos. Meléndez, 123 DPR 720, 732-733 (1989). Se trata de un proceso que requiere la evaluación de muchas circunstancias y factores complejos, y la ponderación de varios criterios diversos. Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra; Ruiz Hernández v. Mahiques, supra, a la pág. 87.*

*De lo anterior es evidente que la decisión final del Secretario apareja el uso de su discreción. Tal decisión no puede tomarse sin antes sopesar numerosos elementos y pasar juicio sobre distintas consideraciones, para entonces determinar qué es lo que más conviene al interés general y al bien común. Ruiz Hernández v. Mahiques, supra. Es por ello que el Art. VI del Reglamento Núm. 56, transcrito antes, en términos claros dispone que cuando una solicitud para un certificado de necesidad y conveniencia "no llene uno o más de los criterios aplicables, la solicitud podrá ser denegada". Surge de modo palmario que en estos casos el Secretario tiene discreción para denegar el certificado; o por implicación, para concederlo, si ello es necesario y conveniente. Tiene discreción para obviar un criterio reglamentario, cuando ello sea procedente.*

*Este reconocimiento reglamentario de la discreción referida del Secretario merece nuestra deferencia por dos razones fundamentales. Por un lado, reiteradamente hemos afirmado la norma doctrinal de que la interpretación que una agencia le de a su ley orgánica amerita gran respeto y consideración judicial. Asoc. Médica de P.R. v. Cruz Azul, 118 DPR 669, 678 (1987); Tormos & DACO v. F.R. Technology, 116 DPR 153, 160 (1985); Quevedo Segarra v. J.A.C.L., 102 DPR 87, 96 (1974). Por otro lado, una interpretación contextual de la Ley Núm. 2 referida claramente revela, como intimamos en el párrafo anterior, que el legislador dejó en manos del Secretario la determinación de conceder o denegar los certificados requeridos, sujeto a unas guías y criterios, que aparejan un ámbito de discreción.*

*Es cierto que la Ley Sobre Certificados de Necesidad y Conveniencia contiene disposiciones específicas y rigurosas que el Secretario de Salud debe observar durante las varias etapas del proceso de conceder o denegar los certificados requeridos. Pero ello sólo significa que su discreción está debidamente limitada. Las disposiciones aludidas persiguen demarcar precisamente el alcance de su discreción. No pretenden ser una camisa de fuerza para restringir innecesariamente la propia facultad que le delega la Ley Núm. 2 para expedir o denegar los certificados referidos. Como tantas veces sucede en el Estado moderno, por la complejidad del mandato que se le otorga al Secretario, se le delegan amplios poderes, con normas para delimitar su ejercicio, pero otorgándole a la vez discreción en el desarrollo y ejecución de la política pública. M & B.S., Inc. v. Depto. de Agricultura, 118 DPR 319 (1987); López v. Junta de Planificación, 80 DPR 646 (1958)."*

Asimismo, en esta jurisdicción, la función revisora de los tribunales apelativos respecto a dictámenes administrativos es limitada y debemos conferir un alto grado de deferencia al foro especializado. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425 (1997). Ello es así, por razón que tales procedimientos tienen a su favor una presunción de regularidad y corrección que ha de ser respetada. *Murphy Bernabe v. Tribunal Superior*, 103 DPR 692, 699 (1975). Además, porque son agencias que de ordinario cuentan con la experiencia y conocimientos especializados sobre los asuntos que se encuentran bajo su encomienda. *Fac. C. Soc. Aplicadas, v. C.E.S.*, 133 DPR 521, 533 (1993).

Sin embargo, la deferencia reconocida no equivale a la renuncia de nuestra función revisora en instancias apropiadas y meritorias, como resulta ser cuando la agencia actúa de forma arbitraria, ilegal, irrazonable o cuando la determinación no queda sostenida por prueba sustancial en la totalidad del expediente. *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85, 95 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 673-674 (1997). Lo esencial al ejercer nuestra función revisora sobre los dictámenes de los entes administrativos, es determinar si lo resuelto está avalado por la prueba ofrecida y que la agencia no haya incurrido en un abuso de discreción. *Agosto Serrano v. F.S.E.*, 132 DPR 866, 879 (1993); *Murphy Bernabe v. Tribunal Superior, supra*. Por ello, se hace necesario atender el fundamento en que el dictamen administrativo descansa.

La Sección 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU), establece los límites al alcance de la revisión judicial de decisiones administrativas. A tal fin, dispone que, de ordinario, los tribunales no intervendrán con las determinaciones de hecho de un organismo administrativo cuando se encuentran fundamentadas en suficiente evidencia sustancial que surja del expediente administrativo, considerado en su totalidad. 3 LPRA 2175; *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70 (2000).

Por otra parte, las conclusiones de derecho pueden ser revisadas por el tribunal en todos sus aspectos. *Otero et. al. v. Toyota*, 163 DPR ___ (2005), **2005 J.T.S. 13**; *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ámbar Inc.*, 161 DPR ___ (2004), **2004 J.T.S. 4**. Esto no significa que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de derecho de la agencia, sustituyendo el criterio de la agencia por el propio. Los tribunales reconocen gran peso y deferencia a las interpretaciones hechas por la agencia administrativa respecto a las leyes de las que son custodios. Tal deferencia judicial al *"expertise"* administrativo; sin embargo, cede ante una actuación irrazonable o ilegal. La interpretación de la agencia también cede cuando la misma produce resultados inconsistentes o contrarios al propósito del estatuto interpretado y a su política pública. *Pacheco, Rodríguez v. Est. de Yauco*, 160 DPR ___ (2003); **2003 J.T.S. 150**. Situación similar ocurre en cuanto a cualquier otra interpretación que del derecho efectúe el foro administrativo.

La oposición al dictamen administrativo, en esta causa, se centra esencialmente en los siguientes aspectos, a saber: (i) que el edificio donde ubicará el laboratorio propuesto aún no está terminado, por lo que no se puede establecer fecha alguna en que pudiese comenzar a funcionar el laboratorio propuesto; (ii) que no se probó que en dicho edificio operarían oficinas médicas, lo que incide con el elemento de necesidad para establecer el

laboratorio propuesto; (iii) que el laboratorio propuesto no ha suscrito contrato alguno con los planes médicos que proyecta aceptar; (iv) que no se probaron fehacientemente las credenciales profesionales de la que será la directora del laboratorio propuesto, Lcda. Evelyn Torres; (v) que no se incluyó en las determinaciones de hechos que en el Municipio de Hatillo existen doce laboratorios que brindan los mismos servicios que el laboratorio propuesto; (vi) que no fue razonable por parte de la agencia evaluar el criterio de necesidad y conveniencia solamente respecto a lo que ubica en el radio de una milla del laboratorio propuesto (área de servicio); y (vii) que los estimados de 12,000 pacientes y 26,684 pruebas que espera realizar el laboratorio propuesto en el primer año de operación son sobrestimados e irreales, en comparación con la prueba que presentó el recurrente.

Hemos confrontado tales planteamientos con el expediente administrativo. De este último se desprende, en primer término, que entre la prueba estipulada por las partes se encuentra un permiso emitido el 12 de abril de 2004 por la Agencia de Reglamentos y Permisos aprobando la construcción de un edificio de oficinas médicas. (Ap., pág. 228.) En dicho edificio se propone ubicar las facilidades del laboratorio propuesto. Asimismo, del informe rendido por la Oficial Examinadora trasciende que el recurrido indicó que el laboratorio comenzaría a funcionar dentro del término de tres meses a partir de la fecha en que se otorgue el CNC, cumpliendo de ese modo con la exigencia del Art. 3, inciso 5(iv) de la Ley Núm. 2, *supra*, y del Reglamento 112, Art. IV. (Ap., pág. 191.)

Por otro lado, las partes también estipularon el *currículum vitae* de la Lcda. Evelyn Torres Ramírez, así como una carta suscrita por el Departamento de Salud donde se le notifica que cumple con los requisitos exigidos para desempeñarse como Directora de un laboratorio clínico, posición para la que es considerada por el recurrido. *Id.*, a la pág. 179. Por tanto, es totalmente improcedente impugnar en esta etapa las credenciales profesionales de la Lcda. Torres Ramírez. Los planteamientos (iv) y (v) fueron ampliamente discutidos anteriormente, por lo que no es necesario abundar más al respecto.

Finalmente, en cuanto a los cálculos estimados por el laboratorio propuesto e impugnados por el recurrente, preciso es señalar que al Departamento le mereció entera credibilidad la prueba pericial del laboratorio proponente, tanto los métodos utilizados para los cómputos, como los resultados obtenidos en dichos informes. Al respecto, el ente administrativo encontró probado que la población residente y flotante para la milla radial del laboratorio proponente asciende a 10,992 personas, que la demanda por satisfacer en el área de servicio es de aproximadamente 26,684 pruebas o *"analitos"*, ▇ proyectando capturar en su primer año de operaciones un total aproximado de 12,000 procedimientos. En ningún momento, el recurrido estableció que en su primer año proyectaba atender 12,000 pacientes, por lo que el planteamiento del recurrente surge como consecuencia de una premisa equivocada, lo que lo lleva a la incorrecta conclusión de que los cálculos fueron sobrestimados por el laboratorio proponente para hacer viable la facilidad proyectada.

Los términos *"procedimientos"* y *"pacientes"* no son sinónimos. Basta señalar que a un paciente o cliente del laboratorio se le puede efectuar más de una prueba.

Como vemos, los planteamientos apuntados por el recurrente no implican impedimentos infranqueables al proceso de solicitud de CNC para el laboratorio propuesto. Entendemos que tales argumentos son totalmente inmeritorios e inconsecuentes a la causa de epígrafe. Preciso es puntualizar que meras alegaciones y teorías, como tampoco argumentos forenses, constituyen prueba. *Pressure Vessels of P.R. v. Empire Gas of P.R.*, 137 DPR 497, 526 (1994). Conjeturas o especulaciones no constituyen hechos probados. *Morales v. Clínica Femenina de P.R.*, 135 DPR 812, 814 (1994).

El recurrente fundamenta sus planteamientos en hechos no creídos por el foro administrativo y no presentan ante nos datos contundentes que tiendan a establecer que el dictamen fue arbitrario, irracional o que se tomó en ausencia de evidencia sustancial.

Por el contrario, un análisis detenido de la totalidad del expediente administrativo nos lleva a concluir que la determinación formulada por el Departamento de Salud está debidamente apoyada en fundamentos razonables obrantes en el récord. La misma se predica, principalmente, en el cómputo de los habitantes dentro de la milla radial, en conjunto con la demanda de residentes fuera de la milla radial que acuden al área en cuestión a solicitar tales servicios, conocido ello como población transitoria o flotante, que excede los 5,000 habitantes requeridos en el Reglamento 112, *supra*. Asimismo, la Oficial Examinadora analizó todos los criterios establecidos en ley a la luz de la prueba practicada en la agencia.

Además, consideró que: (i) sólo existe un laboratorio clínico en la milla radial, por lo que hay espacio para el laboratorio proponente; ▇ (ii) se ofrecerán servicios a domicilio, orientaciones a los pacientes y clínicas educativas; (iii) se proveerán servicios a los pacientes del seguro financiado por la Administración de Seguros de Salud, Medicare, Humana, Triple-S, MCS, entre otros; (iv) el laboratorio operará 64 horas a la semana de lunes a sábado y en el futuro se proyecta establecer horario extendido; (v) el laboratorio estará localizado en un edificio que se anticipa albergará oficinas médicas, en una zona en desarrollo y de fácil acceso, entre otros factores.

Tanto la prueba documental como la pericial antes reseñada, constituyen evidencia suficiente y sustancial para sustentar plenamente la conclusión de la agencia. La Oficial Examinadora, a nuestro juicio, fue razonable en su interpretación de la Ley Núm. 2, *supra*, y del Reglamento 112, *supra*. Por su parte, el recurrente, Laboratorio Plaza del Norte, no identificó en el récord la existencia de prueba diferente a la que consideró el Departamento de Salud, que en efecto menoscabara el valor probatorio de esta última, por lo cual no logró rebatir la presunción de regularidad y corrección que asiste al ente administrativo. Por lo tanto, coincidimos con el criterio del Departamento de Salud, a los efectos de que existe necesidad para el laboratorio clínico propuesto por el aquí recurrido, Laboratorio del Norte, para operar en el área solicitada. No se cometió el error apuntado.

**Dictamen**

Conforme lo expuesto, confirmamos la resolución recurrida.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones