# 2008 DTA 99

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE MAYAGÜEZ-AGUADILLA
PANEL IX**

ARQUELIO RIVERA VÁZQUEZ
Recurrido

v.

VICENTE SILVA PADILLA
Peticionario

Núm. KLCE-2007-00570

San Juan, Puerto Rico, a 31 de julio de 2008

Panel integrado por su Presidente, el Juez Rodríguez Muñiz,
y los Jueces Soler Aquino y Cordero Vázquez

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

El Sr. Vicente Silva Padilla (Sr. Silva) nos solicita la revocación de la Orden emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de Cabo Rojo, el 19 de marzo de 2007, notificada el 21 de marzo de 2007. Mediante dicha orden, el TPI declaró no ha lugar la moción de relevo de sentencia presentada por el Sr. Silva.

### I

El 25 de octubre de 2005, Arquelio Rivera Vázquez (Sr. Rivera) presentó demanda sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria contra el Sr. Silva. De las alegaciones surge que el 22 de diciembre de 2000, el Sr. Silva suscribió un préstamo garantizado por un pagaré hipotecario por la suma de cuarenta mil dólares ($40,000) más intereses. El Sr. Silva adeudaba el principal más seis mil dólares de intereses y cuatro mil dólares ($4,000) por costas, desembolsos, y honorarios de abogado, para un total de cincuenta mil dólares ($50,000).

El 21 de diciembre de 2005, el Sr. Rivera presentó Moción Solicitando Anotación en Rebeldía en la que señaló que el Sr. Silva había sido emplazado el 18 de noviembre y aún no había contestado la demanda.

El 27 de diciembre de 2005, notificada el 29 de diciembre de 2005, el TPI emitió Orden en la que declaró no ha lugar la solicitud de rebeldía, pues no se sometió el emplazamiento diligenciado.

Así las cosas, el 24 de febrero de 2006, el Sr. Rivera presentó Moción Informativa mediante la cual sometió el emplazamiento debidamente juramentado por el emplazador.

El 24 de febrero de 2006, notificada el 13 de marzo de 2006, el TPI emitió Orden en la que anotó la rebeldía a la parte demandada. Además, ordenó al Sr. Rivera presentar en treinta (30) días una declaración jurada donde certificara que el demandado no era menor de edad ni incapacitado o si se encontraba en las fuerzas armadas. También debía someter una certificación registral, evidencia de la deuda y un proyecto de sentencia.

El 24 de mayo de 2006, el Sr. Rivera presentó Moción en Cumplimiento de Orden, la cual acompañó con una declaración jurada. En cuanto a la deuda, el Sr. Rivera señaló que no había recibido pago alguno por parte del Sr. Silva.

El 13 de junio de 2006, notificada en esa misma fecha, el TPI emitió Orden en la que señaló que no se podía dictar sentencia hasta que se sometiera la certificación registral.

El 25 de septiembre de 2006, el Sr. Rivera presentó Moción Informativa Y En Cumplimiento De Orden a los efectos de informar que en el Registro de la Propiedad de San Germán se le indicó que no se podía expedir una certificación pues aún no se había calificado la escritura de hipoteca presentada.

El 16 de noviembre de 2006, el Sr. Rivera presentó escrito titulado Moción en Cumplimiento de Orden mediante el cual sometió el proyecto de sentencia solicitado por el TPI. Aclaró que la sentencia sería por cobro de dinero en lugar de ejecución de hipoteca, pues la hipoteca no había sido calificada por el Registrador de la Propiedad.

El 29 de noviembre de 2006, notificada el 1ro de diciembre de 2006, el TPI emitió Sentencia en la que declaró con lugar la demanda en cobro de dinero y ordenó al Sr. Silva pagarle al Sr. Rivera cuarenta mil dólares ($40,000) de principal, los intereses devengados hasta el 22 de mayo de 2006, cuatro mil dólares ($4,000) por costas, gastos y honorarios de abogado, según pactados en el pagaré.

El 6 de febrero de 2007, el Sr. Rivera presentó Moción Solicitando Ejecución de Sentencia y Orden y Mandamiento de Embargo.

El 13 de febrero de 2007, el TPI emitió Orden en la que declaró con lugar la solicitud para la ejecución de la sentencia y el embargo contra el Sr. Silva.

El 27 de febrero de 2007, el Sr. Rivera presentó Moción Solicitando Inscripción de Gravamen de Litigio. Señaló que el Sr. Silva era dueño de un camión mezcladora de cemento, por lo que solicitó que se expidiera una orden de gravamen sobre dicho bien mueble.

El 1ro de marzo de 2007, el Sr. Rivera presentó Moción Solicitando Orden Enmendada a los efectos de que se ordenara al Alguacil del Tribunal a que *"rompa cualquier portón, candado o cerradura para poderse incautar de los bienes del demandado en el diligenciamiento del embargo"*. El 1ro de marzo de 2007, el TPI emitió Orden en la que declaró con lugar la referida moción.

El 19 de marzo de 2007, el Sr. Silva presentó *"Moción Urgente Sobre Relevo de Sentencia Bajo la Regla 49.2 de las de Procedimiento Civil"*. Señaló que en este caso la sentencia en rebeldía concedía un remedio distinto al solicitado en la demanda sobre ejecución de hipoteca originalmente instada por el Sr. Rivera. Sostuvo que el pleito se convirtió en una acción en cobro de dinero sin que se presentara una demanda enmendada y le fueran notificados los nuevos remedios solicitados mediante emplazamiento según dispuesto en las Reglas 4.4 y 67.1 de Procedimiento Civil. De otra parte, el Sr. Silva señaló que conforme a la Regla 45.2 (b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 45.2 (b), cuando se precisa fijar el importe ilíquido de una cuenta en un caso ventilado en rebeldía, el tribunal deberá celebrar las vistas que crea necesarias para recibir prueba y poder dictar sentencia. Alegó que de la sentencia del 19 de noviembre de 2006 no surgía que el TPI hubiese celebrado la vista evidenciaria.

El Sr. Silva también señaló que al momento de instarse la demanda, él había presentado una petición bajo el Capítulo 13 del Código de Quiebras y existía una Orden de Paralización Automática, 11 U.S.C. 362, desde el 8 de agosto de 2005 hasta el 23 de enero de 2007 cuando dicho caso fue desestimado. Añadió que el Sr. Rivera no fue incluido en la lista de acreedores. Planteó que la orden de paralización automática operaba de pleno derecho aunque no se hubiese incluido al Sr. Rivera en la lista de acreedores.

El 19 de marzo de 2007, notificada el 21 de marzo de 2007, el TPI emitió Orden en la que resolvió:

*"1. EL 1ER ERROR SEÑALADO POR LA PARTE DEMANDANTE CARECIDO (SIC) DE MÉRITOS. EL REMEDIO FUE CONCEDIDO POR EL TRIBUNAL, YA QUE NO PROCEDÍA LA EJECUCIÓN DE LA HIPOTECA, YA QUE NO ESTABA INSCRITO (SIC) EN EL REGISTRO DE LA PROPIEDAD.*

*2. NO HA LUGAR AL 2DO SEÑALAMIENTO. SE DECLARA NO HA LUGAR LA REGLA 49.2 DE PROC. CIVIL PRESENTADA POR LA PARTE DEMANDADA."*

El 20 de abril de 2007, el Sr. Silva presentó recurso de *certiorari* en que señaló la comisión de los siguientes errores:

*"A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO ACOGER LA MOCIÓN URGENTE SOBRE RELEVO DE SENTENCIA BAJO LA REGLA 49.2 DE LAS DE PROCEDIMIENTO, TODA VEZ QUE EL TRIBUNAL DICTÓ SENTENCIA EN CONTRA DE LO DISPUESTO POR LA REGLA 67.1 DE LAS PROCEDIMIENTO CIVIL, 1979 QUE REQUIERE QUE LAS ALEGACIONES EN QUE SE SOLICITEN REMEDIOS NUEVOS O ADICIONALES CONTRA LAS PARTES EN REBELDÍA SE LE NOTIFICARÁN EN LA FORMA DISPUESTA EN LA REGLA 4.4 PARA DILIGENCIAR EMPLAZAMIENTOS.*

*B. EL PROCEDIMIENTO DE REBELDÍA MEDIANTE EL CUAL SE DICTÓ SENTENCIA, NO CUMPLIÓ CON LO DISPUESTO EN LA REGLA 45.2 (B).*

*C. EL DEMANDADO ESTUVO BAJO LA PROTECCIÓN DE LA PARALIZACIÓN AUTOMÁTICA DE LA SECCIÓN 362 DE LA LEY FEDERAL DE QUIEBRAS "AUTOMIC STAY".*

El 4 de mayo de 2007 emitimos Resolución en la que concedimos término de treinta (30) días al Sr. Rivera para que mostrara causa por la cual no debíamos expedir el recurso presentado y revocar la resolución recurrida por la existencia de la orden de paralización automática expedida por la Corte de Quiebras.

El Sr. Rivera no ha presentado su alegato, por lo que· procederemos a resolver sin el beneficio de su comparecencia.

## II

La Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.2, establece un mecanismo que permite a los tribunales suspender el efecto de una sentencia final y firme, orden o procedimiento, cuando, a su juicio, está presente alguna de las siguientes circunstancias: (1) error, inadvertencia, sorpresa o negligencia excusable; (2) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio; (3) fraude, falsa representación u otra conducta impropia de una parte adversa; (4) nulidad de la sentencia; (5) la sentencia ha sido satisfecha; y (6) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

El Tribunal Supremo ha resuelto reiteradamente que el promovente de una moción de relevo tiene que demostrar específicamente que cumple con los requisitos de la Regla 49.2, *supra*, o sea, traer a la atención del tribunal los hechos y las razones que justifican la concesión del relevo que solicita. También deberá demostrar que en todo momento ha sido diligente en la tramitación del asunto de que se trate. *Olmedo Nazario v. Sueiro Jiménez,* 123 D.P.R. 294, 298-299 (1989); *Neptune Packing Corp. v. Wakenhut Corp.,* 120 D.P.R. 283, 292 (1988).

Como vemos, mediante la Regla 49.2, *supra*, el tribunal puede relevar o modificar los efectos de una sentencia, una resolución o una orden. *Pardo Santos v. Sucn. Stella Royo,* 145 D.P.R. 816, 824 (1998). Dicha regla es un mecanismo procesal post sentencia para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia. Sin embargo, no es una llave maestra para reabrir a capricho el pleito ya adjudicado y echar a un lado la sentencia correctamente dictada. *Ortiz Serrano v. Ortiz Díaz,* 106 D.P.R. 445, 449 (1978). Este remedio permite al tribunal hacer un balance entre dos (2) intereses en conflicto: de una parte, que toda litigación sea concluida y tenga finalidad; y de otra parte, que en todo caso se haga justicia. *Náter Cardona v. Ramos Muñiz,* 162 D.P.R. 616, 623-624 (2004) citando a Wright, Miller & Kane, *Federal Practice and Procedure*, Vol. 11, 2da ed., West Pub., 1995, sec. 2851, a la página 227.

Ahora bien, independientemente de la existencia de uno de los fundamentos expuestos en la Regla 49.2, *supra*, el relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Náter Cardona v. Ramos Muñiz, supra,* a las páginas 624; *Rivera Meléndez v. Algarín Cruz,* 159 D.P.R. 482,490 (2003). *"[N]o basta con demostrar al tribunal la procedencia por uno de los fundamentos. Después de demostrado el fundamento, hay que también convencer al tribunal que debe ejercitar su discreción bajo las circunstancias del caso para dejar sin efecto la sentencia".* Rafael Hernández Colón, *Manual de Derecho procesal civil*, 2da ed. revisada, Equity, 1981, sec. 4502, a la página 305. Es norma resuelta en nuestro ordenamiento jurídico, que la moción de relevo de sentencia no puede ser utilizada como un mecanismo para corregir errores de derecho ni como remedio sustituto para la solicitud de una reconsideración o para los recursos de apelación o revisión provistos por ley. *Pagán Navedo v. Alcalde Mun. Cataño,* 143 D.P.R. 314, 327 (1997); *Olmedo Nazario v. Sueiro Jiménez, supra,* a la página 299. En particular, el Tribunal Supremo ha advertido que la Regla 49.2 no debe ser utilizada para extender indirectamente los términos para acudir en alzada, pues esto atentaría contra la estabilidad y certeza de los procedimientos judiciales en nuestra jurisdicción. *Piazza Vélez v. Isla del Río, Inc.,* 158 D.P.R. 440, 476-477 (2003). Dicha regla no puede utilizarse para premiar la dejadez y falta de diligencia en perjuicio de los intereses de la otra parte y la buena administración de la justicia. *Dávila v. Hospital San Miguel,* 117 D.P.R. 807, 818 (1986).

## III

En su primer señalamiento de error, el Sr. Silva alegó que el TPI erró al denegar la moción de relevo de sentencia, toda vez que emitió su dictamen en contra de lo dispuesto en la Regla 67.1 de las Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 67.1, la cual requiere que las alegaciones que soliciten remedios nuevos o adicionales contra las partes en rebeldía se notifiquen conforme lo dispuesto en la Regla 4.4 para el diligenciamiento de emplazamientos.

El Sr. Silva alegó que el Sr. Rivera desistió de la solicitud de ejecución en pública subasta del inmueble hipotecado para utilizar posteriormente el procedimiento de la Regla 56 de las de Procedimiento Civil sobre aseguramiento de sentencia contra todo su patrimonio. Añadió que como la sentencia en cobro de dinero no concedió el remedio solicitado en la demanda, sino otro distinto, y como no se le emplazó nuevamente para notificarle de dicha enmienda a las alegaciones, dicho dictamen enmendado (de ejecución de hipoteca a cobro de dinero) era nulo.

La Regla 67.1 de Procedimiento Civil, *supra*, dispone claramente que todo escrito y orden deberá ser notificado, solamente, a las partes que hayan comparecido en autos. Aclara, además, que no es necesario notificar los escritos presentados por las demás partes y las órdenes del tribunal a una parte que esté en rebeldía por no haber comparecido al pleito, excepto cuando se soliciten remedios nuevos o adicionales en su contra. *Marín v. Fastening Service Systems, Inc.*, 142 D.P.R. 499, 509 (1997).

Por otra parte, la Regla 56.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.1, confiere autoridad a los tribunales de primera instancia para, en cualquier momento y a instancias de la parte reclamante, dictar *"cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia"*. Los remedios provisionales así autorizados incluyen el embargo de bienes, la prohibición de enajenar, la sindicatura, órdenes para hacer o desistir de hacer actos específicos, así como cualquier otra medida que el tribunal estime apropiada, según las circunstancias del caso. Véanse, *Ramos y otros v. Colón y otros*, 153 D.P.R. 534, 541-542 (2001).

En este caso, el Sr. Rivera solicitó en su demanda original sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria, los siguientes remedios: a) que se condenara a la parte demandada a pagar las cantidades de dinero adeudadas; b) que se ordenara la ejecución de la hipoteca relacionada mediante la venta en pública subasta del inmueble hipotecado para con su producto satisfacer hasta donde alcanzara el importe de la sentencia; y c) que se ordenara el desalojo de la propiedad una vez fuera subastada y adjudicada.

Mediante Sentencia del 29 de noviembre de 2006, el TPI ordenó al Sr. Silva pagarle al Sr. Rivera cuarenta mil dólares ($40,000) de principal, los intereses devengados hasta el 22 de mayo de 2006 y cuatro mil dólares ($4,000) por costas, gastos y honorarios de abogado, según lo pactado en el pagaré.

Ciertamente, el TPI concedió los mismos remedios solicitados por el Sr. Rivera, con excepción de la ejecución de la hipoteca sobre propiedad. De acuerdo a los hechos en este caso no procedía la ejecución de hipoteca, pues ésta no se había inscrito en el Registro de la Propiedad. Es aquí de récordar que la hipoteca es una mera garantía de la deuda, cuyo carácter es de garantía real constitutivo. Si no ha sido calificada e inscrita la hipoteca, aunque la deuda monetaria persista, ésta no constará con la garantía inmobiliaria hasta que no se inscriba el gravamen real. *Rosario Pérez v. Registrador*, 115 D.P.R. 491, 493 (1984). Todo trámite de cobro de dinero y ejecución de hipoteca, incluye ambas operaciones, cuando ambas proceden en derecho. Ello así, el procedimiento de autos ante el TPI tenía que ser uno de cobro de dinero que podía desembocar en uno no de ejecución de hipoteca, que era entonces inexistente. Las órdenes que emitió el TPI a los efectos de que se embargaran las propiedades del Sr. Silva fueron remedios válidos en cobro de dinero y posteriores a la sentencia para ejecutar la misma. Conforme a lo anterior, en este caso no era necesario presentar una demanda enmendada y expedir nuevos emplazamientos según alegó el Sr. Silva, precisamente porque lo pedido en la demanda original ya incluía el cobro de dinero y lo del embargo post sentencia es trámite usual post sentencia que no hay que alegar en la demanda. Resolvemos que no se cometió el primer señalamiento de error alegado, porque no se trata de una enmienda a la demanda para solicitar remedios nuevos y diferentes.

## IV

En cuanto al segundo señalamiento de error, el Sr. Silva alegó que el TPI erró al dictar sentencia en rebeldía sin celebrar una vista evidenciaria para fijar el estado de la cuenta según dispone la Regla 45.2 (b) de las de

Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 45.2. No le asiste la razón, veamos.

La Regla 45.2, *supra,* establece los elementos necesarios para que pueda dictarse una sentencia en rebeldía. La misma distingue dos (2) trámites para obtener una sentencia en rebeldía, a saber: aquélla a ser dictada por el secretario, y la emitida por el propio tribunal. A esos efectos, la Regla dispone:

"*(a) Cuando la reclamación del demandante contra un demandado sea por una suma líquida o por una suma que pueda liquidarse mediante cómputo, el secretario, a solicitud del demandante y al presentársele declaración jurada de la cantidad adeudada, dictará sentencia por dicha cantidad y las costas contra el demandado cuando éste haya sido declarado en rebeldía, siempre que no se trate de un menor o persona incapacitada.*

*(b) En todos los demás casos, la parte con derecho a una sentencia en rebeldía la solicitará del tribunal; pero no se dictará sentencia en rebeldía contra un menor o persona incapacitada a menos que estén representados por el padre, madre, tutor, defensor judicial u otro representante que haya comparecido en el pleito. Si para que el tribunal pueda dictar sentencia o para ejecutarla se hace necesario fijar el estado de una cuenta o determinar el importe de los daños, o comprobar la veracidad de cualquier aseveración mediante prueba, o hacer una investigación de cualquier otro asunto, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas o encomendar la cuestión a un comisionado.* Cuando la parte contra la cual se solicita sentencia en rebeldía haya comparecido en el pleito, dicha parte será notificada del señalamiento de cualquier vista en rebeldía que celebre.*" (Énfasis nuestro.)

En su inciso (b) la citada regla señala que si el tribunal, para poder dictar sentencia en rebeldía, necesita "*fijar el estado de una cuenta o determinar el importe de los daños, o comprobar la veracidad de cualquier aseveración mediante prueba, o hacer una investigación de cualquier otro asunto,... deberá celebrar las vistas que crea necesarias y adecuadas o encomendar la cuestión a un comisionado.*" En otras palabras, si el foro de instancia tiene ante su consideración el fijar el importe de unos daños, el estado de una cuenta, la comprobación de la veracidad de cualquier aseveración o la investigación sobre algún otro asunto, tendrá la obligación de celebrar una vista en rebeldía, de lo contrario, no, porque la anotación de rebeldía implica que el demandado ha aceptado todas las alegaciones de hechos bien alegadas; y admisión de parte, relevo de prueba. *Alamo v. Supermercado Grande Inc.,* 158 D.P.R. 93, 100-102 (2202), *León v. Rest. El Tropical,* 154 D.P.R. 249, 262 (2001). Conforme a lo anterior, la celebración de la vista en rebeldía no es mandatoria en todos los casos y no lo era en éste.

Cónsono con ello, se ha sostenido que "*el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba... esto es, si un tribunal necesita, para poder dictar sentencia en rebeldía, comprobar la veracidad de cualquier alegación, o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas,*" *Ocasio Méndez v. Kelly Services Inc.,* 163 D.P.R. __, **2005 JTS 9,** a la página 640, Opinión del 20 de enero de 2005.

De las alegaciones de la demanda presentada por el Sr. Rivera surge que este reclamó que el Sr. Silva le adeudaba las siguientes cantidades: a) cuarenta mil dólares ($40,000) de principal; b) seis mil ($6,000) de intereses legales al 10% anual desde su fecha de otorgamiento hasta la fecha de vencimiento; c) cuatro mil dólares ($4,000) para el pago de gastos, costas, desembolsos y honorarios de abogado; y d) los intereses acumulados intereses acumulados desde la sentencia hasta la radicación de la demanda. Estas cantidades totalizaban cincuenta mil dólares ($50,000). De otra parte, el 24 de mayo de 2006, el Sr. Rivera presentó Moción en Cumplimiento de Orden, la cual acompañó con una declaración jurada en la que declaró que no había recibido pago alguno por parte del Sr. Silva.

En el presente caso, el Sr. Rivera solicitó en la demanda una cuantía específica y mediante declaración

jurada indicó que no se le había hecho pago alguno a la deuda contraída por el Sr. Silva. Ante estos hechos, forzoso es colegir que no era necesario que el TPI celebrara una vista evidenciaria para fijar el estado de la deuda. Por ello, concluimos que no se cometió el segundo error alegado.

## V

Como tercer señalamiento de error, el Sr. Silva señaló que el TPI erró al no conceder el relevo de la sentencia, pues al momento de presentarse la demanda estuvo bajo la protección de la paralización automática ("*automic stay*") de la Sección 362 de la Ley Federal de Quiebras.

El Sr. Silva señaló que existía una Orden de Paralización Automática desde el 8 de agosto de 2005 hasta el 23 de enero de 2007, pues la petición fue desestimada. También señaló que el Sr. Rivera no fue incluido en la lista de acreedores. Planteó que la orden de paralización automática operaba de pleno derecho aunque no se hubiese incluido al Sr. Rivera en la lista de acreedores.

El propósito del Código de Quiebras de los Estados Unidos, 11 U.S.C.A. sec. 101 *et seq.*, es crear las condiciones necesarias para que el deudor pueda, en términos económicos, comenzar de nuevo protegiéndose, a la vez, los intereses de los acreedores, mediante la distribución de los activos del deudor, a tenor con las disposiciones del aludido Código. *Allende Pérez v. García*, 150 D.P.R. 892, 898-899 (2000). Véase, además, *Collier On Bankrupcy*, 15th ed., Matthew Bender (2001), Vol. 5, sec. 541.01, a las páginas 541-7.

El Capítulo 13 del Código de Quiebras permite al deudor reorganizar sus finanzas sin tener que disponer de sus bienes. Como parte del proceso, el deudor deberá proponer un plan para satisfacer todas o casi todas sus deudas mediante pagos regulares al síndico ("*trustee*"). El síndico entonces deberá pagar a los acreedores, de acuerdo al plan establecido. Véase, 11 U.S.C. secs. 1306(b).

La presentación de una petición de quiebra ante el Tribunal de Quiebras tiene el efecto de crear un caudal o "*estate*" y la paralización automática de una serie de procedimientos o actuaciones contra la persona o entidad que presenta la solicitud. *CMI Hospital Equipment Corp. v. Dept. de Salud etc.*, 171 DPR __, **2007 JTS 105**, a la página 1508, Opinión del 30 de mayo de 2007.

El "*estate*" o caudal en quiebra consiste de toda propiedad que estará sujeta a la jurisdicción del Tribunal. Para poder determinar los bienes que compondrán el caudal referido, el deudor tiene la obligación de incluir junto a la petición de quiebra un listado actualizado de sus activos y pasivos, y de sus ingresos y gastos. 11 U.S. C. sec. 362(a)(B). *Id.*

La sección 362(a) del Código de Quiebras, 11 U.S.C. sec. 362(a), enumera una serie de casos en que la mera presentación de una petición de quiebra opera como una paralización automática sobre prácticamente todo procedimiento o reclamación contra el deudor, cuando el procedimiento está relacionado con los bienes del caudal. La paralización comprende, entre otros, los siguientes casos:

"*(1) El comienzo o la continuación, incluyendo el emplazamiento, de un procedimiento o acción judicial, administrativa o cualquier otra acción o procedimiento contra el deudor que se haya presentado o se haya podido presentar antes del comienzo de un caso al amparo del Código de Quiebras, que se haya instado contra el deudor de una reclamación surgida antes del comienzo de un caso al amparo de esta ley.*

...

*(6) Cualquier acción para cobrar o recobrar una reclamación contra el deudor que surgió antes del comienzo del caso de quiebra...*". 11 U.S.C. 362(a).

Cabe destacar que la paralización automática no requiere que el Tribunal de Quiebras emita una orden a esos efectos, como tampoco requiere notificación alguna para que surta efecto *erga omnes*. Basta conque el deudor presente una solicitud ante el Tribunal de Quiebras para que el mecanismo de la paralización automática cobre vida y afecte cualquier reclamación contra el deudor previa a la presentación de la solicitud de quiebras. *Morales v. Clínica Femenina de P.R.,* (Sentencia) 135 D.P.R. 810, 820-821, nota al calce 5 (1994).

Las reclamaciones posteriores a la fecha de presentación del caso solamente se afectarán en la medida en que el acreedor, reclamante o persona con interés, intente ejecutar su reclamación sobre los bienes pertenecientes al caudal. El tratadista Collier expresa al respecto lo siguiente:

*"Actions on claims that arise after the commencement of the case are not stayed. Such a stay would discourage others from dealing with the trustee or debtor in possession. However, enforcement of a judgment on a postpetition claim is typically stayed. Subsections (a) (4) and (a) (5) of section 362 stay any act against property of the estate. Similarly, subsection (a) (5) and (a) (6) stay any act to enforce prepetition claims against the debtor or its property. Consequently, a postpetition claim against the estate may not be enforced against property of the estate, but a postpetition claim against a debtor may be enforced against property that is not property of the estate. Because all of a corporate or partnership debtor's property, whether acquired before or after commencement of a case, is property of the estate, even a postpetittion claim will not be enforceable against such a debtor's property. Similarly, in a chapter 12 or chapter 13 cases, property acquired by the debtor after commencement of the case is property of the estate, at least until the confirmation of a plan."* Collier On Bankrupcy, *supra*, Vol. 1, sección 362.03 (3) (c), a las páginas 362-17.

Como norma general, la paralización mantiene toda su fuerza o vigor hasta que el caso generado por la petición de quiebra se deniegue o desestime o hasta que se releve (*"discharge"*) total o parcialmente al deudor quebrado de sus obligaciones. 11 U.S.C. sec. 362(c). Cualquier procedimiento realizado en violación de esta paralización es nulo o, al menos, anulable. Véase, *In re: Soares,* 107 F.3d 969, 975-976. Sobre el particular, el Tribunal de Circuito de Apelaciones de los Estados Unidos ha expresado en el caso *In re: Calder,* 907 F.2d 953, 956-957 (10th Circuit, 1990), lo siguiente:

*"Under section 362(a), the filing of a bankruptcy petition creates a broad automatic stay protecting the property of the debtor. Ordinarily, any action taken in violation of the stay is void and without effect, Ellis v. Consolidated Diesel Elec. Corp., 894 F.2d 371, 372 (10th Cir. 1990), even where there is no actual notice of the existence of the stay, In re: Smith, 876 F.2d 524, 526 (6th Cir. 1989). Nevertheless, equitable principles may, in some circumstances, be applicable to claimed violations of the stay. **The existing case law indicates that courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the creditor's plight.** See, e.g., In re: Smith Corset Shops, Inc., 696 F.2d 971, 976-77 (1st Cir. 1982) (debtor not entitled to protection where debtor remained "stealthily silent" while creditor obtained a default judgment and execution from a state court in violation of the automatic stay); see also Matthews v. Rosene, 739 F.2d 249, 251 (7th Cir. 1984) (laches barred debtor's attempt to void a 33-month-old state court judgment on the basis of the automatic stay).*

*In our view, it would be inequitable to allow Calder to claim any protections of the automatic stay under section 362(a) to defeat the Jobs' state court judgment. The basic undisputed fact apparent from the record is that Calder actively litigated the state court action and did not provide notice of the pending Chapter 13 proceeding until just before the state court was to enter a final judgment. Calder must bear some responsibility for his unreasonable delay in asserting his rights under section 362(a). Calder's only explanation, that he forgot, is not a legitimate excuse for his delay. To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court, would be inconsistent with the underlying purpose of the automatic stay which is to give a debtor "'a breathing spell from his creditors.'"* Ellis, 894 F.2d at 373 (quoting *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682

F.2d 446, 449 (3d Cir. 1982)).

Los tribunales del Estado Libre Asociado de Puerto Rico tienen jurisdicción para determinar si el procedimiento ante su consideración está sujeto a la paralización automática que impone la presentación de una solicitud de quiebra, al amparo de la Ley de Quiebras federal. Así se ha resuelto por los foros federales. Incluso, se ha admitido que los tribunales de primera instancia estatales tienen jurisdicción concurrente con el Tribunal de Quiebras para conceder o exceptuar la paralización automática que sanciona la ley federal en casos altamente meritorios. Véase, *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939 (6th Cir. 1986); *In re: Baldwin-United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir. 1985). A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado que la paralización que provoca la ausencia de jurisdicción de los tribunales estatales se refiere a las acciones previas a la presentación de la petición de quiebra. *Morales v. Clínica Femenina de P.R., supra,* a las páginas 820-821, nota al calce núm. 5.

De otra parte, en los casos en que se desestima la petición de quiebra, se deja sin efecto la paralización automática y se reinstalan los procedimientos que se dilucidaban contra el peticionario de la quiebra con anterioridad a la interposición de la petición. Los efectos de la desestimación están expresamente contemplados en la sección 349 del Código de Quiebras, 11 U.S.C. sec. 349, la cual dispone que:

*"a. Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.*

*b. Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title –*

*1. reinstates –*

*a. any proceeding or custodianship superseded under section 543 of this title;*

*b. any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510 (c)(2), 522(i)(2), or 551 of this title; and*

*c. any lien voided under section 506(d) of this title;*

*2. vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and*

*3. revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."* 11 U.S.C. § 349

Al producirse la desestimación de la solicitud de quiebra, todo retorna a su estado previo a la paralización.

## VI

En el presente caso, el Sr. Silva no notificó de inmediato al Sr. Rivera ni al TPI que se había acogido al procedimiento del Capítulo 13 bajo la Ley de Quiebras el 8 de agosto de 2005.

De acuerdo a los hechos del caso, el 19 de marzo de 2007, el Sr. Silva presentó solicitud de relevo de sentencia, en la que por primera vez informó sobre su caso de quiebras. Según expuso en su escrito, al 25 de octubre de 2005, fecha en que el Sr. Rivera presentó la demanda en cobro de dinero y ejecución de hipoteca, ya él había interpuesto su petición bajo el Capítulo 13 ante la Corte de Quiebras, por lo que existía una Orden de

Paralización Automática desde el 8 de agosto de 2005, que continuó hasta el 23 de enero de 2007, cuando el caso de quiebras fue desestimado. Sin embargo, del trámite procesal del caso surge que el Sr. Silva omitió notificar de su petición de quiebras al Sr. Rivera y al TPI. No fue hasta después de emitida la sentencia en rebeldía en su contra y que se solicitara su ejecución y se diligenciara el mandamiento de embargo, que el Sr. Silva recurrió al tribunal para que se tomara conocimiento sobre los efectos de la paralización automática que operaba como consecuencia de su petición de quiebras, entre el 8 de agosto de 2005 al 23 de enero de 2007.

La jurisprudencia antes reseñada considera como una posible excepción a la paralización automática, como cuestión de equidad, el desconocimiento por parte del acreedor de la petición de quiebra, dada la *"conducta irrazonable"* asumida por el propio deudor. Ante la conducta del Sr. Silva, entendemos que resulta procedente aplicar la referida excepción en el presente caso y resolver que los procedimientos en la causa I4CI2005-00794 ante el TPI no quedaron paralizados, precisamente por razón de que quien ahora se vale del *"automatic stay"* fue el mismo deudor-demandado (Sr. Silva) que omitió incluir en los *"schedules"* de la Petición de Quiebra la demanda en la causa I4CI2005-00794 y también escondió tal información al TPI y al demandante, Sr. Rivera, luego del emplazamiento de la demanda.

Otra debió haber sido la conducta del Sr. Silva ante el foro judicial y frente al demandante. Aunque no se trate aquí del caso extremo en que la sentencia del TPI fuera ya ejecutada y cobrada o que medien derechos de terceros en su ejecución, lo cierto es que por el único motivo de la inacción negligente o planificada del deudor, Sr. Silva, el proceso ante el TPI continuó hasta el dictamen de sentencia y su embargo, lo que implica, por lo menos costo y esfuerzo por parte del demandante y del Tribunal. No puede ahora el Sr. Silva desenmascarar lo que antes optó por esconder para lograr ventaja, en detrimento del TPI y del demandante. Máxime cuando consta en autos que el trámite bajo el Capítulo 13 de la Ley de Quiebras fue finalmente desestimado y en su vigencia desconoció sobre el pleito I4CI2005-00794 ante el TPI, por lo que tampoco se tomó providencia alguna sobre dicha deuda que conflija con la sentencia del 29 de noviembre de 2006.

El foro judicial siempre ha censurado las actuaciones de partes que tengan el propósito de inducir a error. *Repto. Ind. Corujo v. Cabrera Dist.,* 110 D.P.R. 777, 779-780 (1981); *Rundle v. Fraticelli,* 60 D.P.R. 255, 258 (1942).

*"La conducta contradictoria no tiene lugar en el campo del derecho y debe ser impedida."* Int. Gen. Elec. v. Concrete Builders, 104 D.P.R. 871, 877 (1976).

*"La doctrina se resume en la frase 'nadie puede ir contra sus propios actos' y tiene obvias tangencias con la teoría anglo-sajona del 'estoppel', aunque existen diferencias en su desarrollo y contenido. La doctrina de los actos propios ha sido reconocida hace años por nuestra jurisprudencia."* (Citas omitidas.) *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. 533, 537-538 (1975).

Consideraciones de política pública tampoco permiten que ante los hechos que informan esta causa, el Sr. Silva pueda tomar ventaja contra su acreedor, Sr. Rivera, y en detrimento del foro judicial, único y exclusivamente valiéndose de una anterior conducta nociva a la mejor practica judicial. *Isaac Sánchez v. Universal C.I.T. Credit,* 95 D.P.R. 372, 382 (1967).

A base de lo anterior, resolvemos que el tercer señalamiento de error no se cometió.

## VII

Por los fundamentos señalados, confirmamos la orden emitida por el TPI en la que declaró no ha lugar la moción de relevo de sentencia presentada por el Sr. Silva.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones